## STATE OF CONNECTICUT *v.* JOSE ZAYAS
### (10763)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued January 8—decision released April 9, 1985

*Temmy Ann Pieszak,* special public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, were *Robert Lacobelle,* assistant state's attorney, and *Carl Schuman,* assistant state's attorney, for the appellee (state).

PARSKEY, J. The defendant was convicted by a jury of the crime of attempted burglary in the second degree in violation of General Statutes §§ 53a-102[1] and 53a-49.[2] In his appeal the defendant challenges (1) the reopening of the state's case as an abuse of discretion and as a violation of the prohibition against double jeopardy; (2) the court's instructions on the intent to commit a

---

[1] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein.

"(b) Burglary in the second degree is a class C felony."

[2] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

crime within a dwelling; (3) the instruction on the substantial step element of a criminal attempt; and (4) the sufficiency of the evidence. We find no error.

We consider the defendant's claims in the factual context of the trial. On March 18, 1980, in the early afternoon, Barbara Askew left her single family home in Bridgeport. She had locked the doors and windows before leaving and took with her one of the three keys to the house. Her husband and her mother-in-law, the only other people with permission to enter the home, had the two other keys. She did not return home until 7:45 that evening. At about 7 p.m. two police officers, in response to a call, approached the Askew home. Upon arrival they observed two men, one of whom was the defendant, on the porch of the house near the front door. As the officers approached the men, they descended the porch steps and complied with an order to stay where they were. One of the men said the two were looking for someone named Poppy. One officer went onto the porch and noticed that a small storm window was pushed up and that there were pry marks on the wooden window sill. There were also paint chips on the sill. The two men were searched and a screwdriver was taken from each man. One of the screwdrivers was found at the time of the arrest to match perfectly with some of the pry marks on the window sill. A detective later matched both screwdrivers to the pry marks.

I

After the state had rested its case the defendant moved for a judgment of acquittal claiming that the state had failed to prove an essential element of the crime charged, namely, that the crime was committed at "night" as required by statute. The applicable statute; General Statutes § 53a-100; defines "night" as the period between thirty minutes after sunset and thirty

minutes before sunrise. The defendant argued that the state had failed to establish that the offense occurred at night within the meaning of the statute by failing to offer evidence as to the time of sunset. The state thereupon moved to reopen its case for the purpose of establishing the time of sunset. After the court granted its motion, the state offered a certified document from the United States Naval Observatory on the basis of which it asked the court to take judicial notice of the time of sunset at Bridgeport on the day in question. The court admitted the document as a full exhibit.[3] Although the procedure followed was unnecessary, we find no error.

The time of sunrise and sunset on any given day is a matter that falls within the realm of facts which are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy and therefore may be judicially noticed. *State v. Morris,* 47 Conn. 179, 180 (1879). Facts judicially noticed need not be proved. "Whatever a court will notice without proof it may state to the jury, or allow to be stated to it, without proof." Thayer, A Preliminary Treatise on Evidence at the Common Law, p. 302. The source of information relied upon is used "not strictly as evidence, but for the purpose of refreshing the memory of the court and jury." *State v. Morris,* supra. "[I]n a jury trial, the court may in its discretion

---

[3] The dissenting opinion, while acknowledging that the trial court has wide discretion on reopening the presentation of evidence, assumes that no such discretion exists if the proffered evidence relates to an essential element of the offense charged. We reached a contrary conclusion in *State v. Watson,* 165 Conn. 577, 345 A.2d 532 (1973). In that case one of the defendants was charged, inter alia, with possession of an unlicensed weapon in a motor vehicle. After all parties had rested but before arguments to the jury had commenced the state moved to reopen its case in order to present further evidence on the crime charged. Upon the granting of the motion the state offered evidence that no gun permit had been issued to this defendant. We held (p. 594) that the court's ruling did not constitute an abuse of the court's discretion.

cause the matter [judicially noticed] to be submitted to the jury either by having it read into the record or marked as an exhibit, or may place it before them in its charge. If the information is thus placed before them, there would be no error in the refusal of the trial court to admit as evidence in the case the source from which it is derived." *Nichols* v. *Nichols,* 126 Conn. 614, 622, 13 A.2d 591 (1940). Even if a fact judicially noticed is not open to argument, however, the better practice is to give the parties an opportunity to be heard before judicial notice is taken. *Moore* v. *Moore,* 173 Conn. 120, 122, 376 A.2d 1085 (1977). But whether a particular fact should be noticed presents a judicial and not a jury question. See *Nichols* v. *Nichols,* supra, 621.

It was not necessary for the court to reopen the state's case in order to inform the jury of the time of sunset on the day in question. Judicial notice may be taken at any stage of the proceedings. See *Nichols* v. *Nichols,* supra, 620–21; Fed. R. Evid., rule 201 (f). That on March 18, 1980, the sun set at 6:02 p.m. in Bridgeport is not open to argument. The defendant did not at the trial nor does he now on appeal question the accuracy of the time stated nor the authenticity or reliability of the source of the information. So long as the parties are offered an opportunity to be heard the court may notice any fact concerning the parties and events of the case that is appropriate for judicial notice. See *Moore* v. *Moore,* supra, 122. After the parties had rested, the court properly could have advised them that, on the basis of the Naval Observatory document or any other pertinent reference material, it proposed to inform the jury in its charge of the time of sunset. That it permitted the state to put that fact before the jury in an exhibit is of little consequence. See *Nichols* v. *Nichols,* supra, 622; *State* v. *Morris,* supra, 180.

The fact that the allegedly missing element was a proper subject for judicial notice removes the essen-

tial underpinning from the defendant's claim that permitting the state to reopen its case constituted an abuse of judicial discretion or a violation of the prohibition against double jeopardy.

## II

We next consider the court's instruction on criminal intent. The court charged the jury that in order to convict the defendant they must find that he intended to commit a crime inside the dwelling. The court did not instruct the jury on any particular crime regarding this element of attempted burglary. The defendant argues that this lack of specificity in the jury instructions deprived him of due process of law because it allowed the jury to find him guilty without necessarily finding all of the elements of attempted burglary to have been proved beyond a reasonable doubt.

The information charged the defendant with having committed the crime of attempted burglary in violation of the pertinent statutes. The defendant did not request a bill of particulars, did not submit a request to charge on the definition of burglary and failed to except to the trial court's instructions on the ground that the court did not properly instruct the jury on the element of criminal intent. Although this issue has not been properly preserved; Practice Book § 854; because a failure properly to instruct the jury on each element of the crime charged might result in denying the defendant due process of law, we shall nevertheless consider it. *State* v. *Smith,* 194 Conn. 213, 217, 479 A.2d 814 (1984). Our inquiry, however, is of a limited nature. "A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when viewed in the context of the entire trial it violated some right guaranteed to the defendant by

the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut." *State* v. *Kurvin,* 186 Conn. 555, 564–65, 442 A.2d 1327 (1982). The question then is whether, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. *State* v. *Smith,* supra, 219.

The trial court instructed the jury that to constitute attempted burglary the evidence must show not only that the defendant attempted an unlawful entry into a dwelling but that he did so with intent to commit a crime therein; that the intended crime could be either the more serious offense of felony or the less serious offense of misdemeanor, each by definition providing for a possible period of incarceration depending on the degree of seriousness; and that an unlawful entry is not enough unless it is accompanied by an intent to commit a crime inside the building. The jury was cautioned that, although the determination of the defendant's mental state was a matter of inference derived from his conduct, the defendant could not be convicted of the act charged unless the jury found that the accused committed the act charged with a criminal purpose.

The defendant asserts that the failure of the court to instruct the jury as to what specific crime or crimes the evidence might show an intent to commit permitted the jury to convict the defendant on wholly noncriminal conduct. We disagree. Common experience tells us that an unlawful entry into a dwelling at night is not without purpose. Nor are people accustomed to enter homes of strangers through a window for innocent purposes. To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft. *People* v. *Johnson,* 28 Ill. 2d 441, 443, 192 N.E.2d 864 (1963);

*Commonwealth* v. *Eppich,* 342 Mass. 487, 493, 174 N.E.2d 31 (1961). The two sets of pry marks on the window sill bespeak criminal purpose. There is no evidence which suggests otherwise. "We cannot ignore the fact that the defendant saw no reason to take exception to an instruction which he now claims is misleading." *State* v. *Kurvin,* supra, 563. If the fact pattern, presented by the evidence, was such that it was capable of varying interpretations, some criminal but others noncriminal though perhaps morally offensive, we would find persuasive the defendant's assertion that, by failing to specify the crime or crimes which the evidence suggested, the court impermissibly allowed the jury to define criminal conduct. *State* v. *Johnson,* 100 Wash. 2d 607, 627, 674 P.2d 145 (1983); *People* v. *Rivera,* 56 App. Div. 2d 701, 702, 392 N.Y.S.2d 516 (1977). But on the record before us we cannot conclude that, taken as a whole and specifically related to the facts of this case, the trial court's instructions failed to guide the jury to a clear understanding of the offense.

This is not to suggest that we approve the charge as given because we do not. As we said in *State* v. *Smith,* supra, 220, "[t]he better practice would have been to instruct the jury on the statutory names and definitions of specific crimes for which there was sufficient evidence of an intent to commit."

### III

To prove a criminal attempt under the statute; General Statutes § 53a-49; the state must show that the intended act constituted a substantial step in the course of conduct planned to culminate in the commission of the crime. In charging on this aspect of the case, the trial court instructed the jury that to be a substantial step the conduct must be strongly corroborative of the actor's criminal purpose. The court then explained that conduct such as possession of materials to be employed

in the commission of the crime where such possession serves no lawful purpose of the actor under the circumstances could not be ruled insufficient as a matter of law. The court pointed out that the state alleged that the accused was in possession of a screwdriver at that particular time and left it to the jury to determine whether "this may or may not be the possession of some instrument that . . . could be employed in the commission of the crime . . . ."

The defendant made no request to charge in this regard and took no exception to the charge as given, but now complains that the trial court added an element to the crime charged and therefore should have instructed the jury that it was the state's burden to establish the "no lawful purpose" aspect of the defendant's possession of a screwdriver. Although we seriously question whether the defendant's assignment implicates any constitutional right, the claim, in any event, is without merit. The court earlier instructed the jury that the state had the burden of establishing every element of the crime charged beyond a reasonable doubt and this instruction would apply to the defendant's purpose in possessing the screwdriver as well as to the other elements of the crime including the related mental element of intention to commit a crime within the premises. There was no reasonable possibility that the jury could have been misled about the allocation of the burden in this instance.

## IV

Finally, we address the defendant's claim that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The defendant asserts that the insufficient element in the state's case is the defendant's intent to commit a crime inside the Askew home. We disagree.

In reviewing a sufficiency of evidence claim on appeal the question presented is whether, viewing the evidence favorably to sustaining the verdict, the trier could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Haddad,* 189 Conn. 383, 387, 456 A.2d 316 (1983). There is no question but that the evidence was sufficient to establish that the defendant attempted an unlawful entry. He was discovered on the porch near the window, a screwdriver in his pocket and the tell-tale pry marks on the window sill. The question then is what inference may be drawn from the attempted forcible entry. It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom. Willie Sutton, the notorious bank robber, when asked why he specialized in robbing banks replied because that is where the money is. Similarly, in burglary cases, from the evidence of an attempt to make a forcible entry it is reasonable for the jury to infer an intent to commit theft. *United States* v. *Thomas,* 444 F.2d 919, 924 (D.C. Cir. 1971); *State* v. *Johnson,* 100 Wash. 2d 607, 625, 674 P.2d 145 (1983). "The love of gain, the desire to get and have, is so wide a principle of human nature, that other motives being eliminated, that remains as a sort of residuary solvent of conduct." *Steadman* v. *State,* 81 Ga. 736, 737, 8 S.E. 420 (1888).

There is no error.

In this opinion PETERS, C. J., and SHEA, J., concurred.

ARTHUR H. HEALEY, J., with whom DANNEHY, J., joins, dissenting. I do not agree with the majority's resolution of the defendant's claim that the trial court abused its discretion in allowing the state to reopen its

case.[1] The majority states that "[i]t was not necessary for the court to reopen the state's case in order to inform the jury of the time of sunset on the day in question." In this criminal case, the majority's ratio decidendi on this issue is that judicial notice may be taken of the time of sunrise and sunset where that factor is an element of the crime charged, where the state has rested its case without even requesting that the court take such judicial notice, and where the defendant has had no opportunity at all to be heard as to the propriety of taking judicial notice.[2] See Fed. R. Evid., rule 201 (e) (opportunity to be heard). As a matter of fundamental fairness as well as of policy, I disagree with this approach because it not only involves, but proves for the state, an element of the crime charged. Accordingly, I would reach the defendant's claim and would hold that the trial court erred.

Defense counsel, immediately upon the state's resting its case, made a comprehensive motion to dismiss based on the sufficiency of the state's evidence. This motion included his crucial claim that the state had not proven that the charged offense of attempted burglary in the second degree had been committed at "night" as that term is defined in General Statutes

---

[1] After a recess and after the state presented its proposed exhibit from the United States Naval Observatory of the times of sunrise and sunset on March 18, 1980, the court, upon hearing both counsel, stated: "I'll allow you to reopen your case on your motion for the State to reopen it for the limited purpose of offering proof as to the question of: at night."

[2] In this context I commend to the majority the cogent approach taken by the Massachusetts Supreme Judicial Court: "[P]roof of an essential element of a crime should not be supplied by judicial notice taken at the appellate level. *United States* v. *Jones,* 580 F.2d 219, 223–24 (6th Cir. 1978). The proper practice in a criminal trial is to submit all factual issues to the jury, including matters of which the judge may take judicial notice. See Fed. R. Evid., rule 201 (g) (jury in a criminal trial not bound by fact judicially noticed); *United States* v. *Jones,* supra. . . . We would not supplement the [state's] proof on appeal by taking judicial notice of a fact not submitted to the jury." (Footnotes omitted.) *Commonwealth* v. *Kingsbury,* 378 Mass. 751, 755, 393 N.E.2d 391 (1979).

§ 53a-100 (a) (3). There is no question but that such was an essential element of that crime. See General Statutes § 53a-102. The only evidence touching that element was that the crime was committed when it was "dark."

Later, the state, admitting that there was no evidence of sunrise or sunset on the date in question, took at least three positions. First, it asked that if the court felt that the evidence was such that it could not submit burglary in the second degree to the jury, then instead it should submit the crime of attempted burglary in the third degree as a lesser included offense. Second, it asked for permission to reopen in order to admit as an exhibit a chart from the United States Naval Observatory which indicated the times of sunrise and sunset on March 18, 1980. If its request to reopen were denied, the state then relied on its third position in which it sought permission to amend the information to conform to the proof; thus the jury would then be charged on attempted burglary in the third degree in violation of General Statutes §§ 53a-49 and 53a-103. The defense again objected pointing out, inter alia, that the state had already had the opportunity to prove its case, "especially on the special elements of the crime and the case should be finished." Over objection and exception, the court permitted the state to reopen "for the limited purpose of offering proof as to the question of: at night."

The defendant, as he was required to do under our rules, had timely made his motion to dismiss. Practice Book §§ 883, 884. While the court did not articulate its decision on that motion, it, in effect, denied it. By permitting the reopening for this purpose, the court did recognize the insufficiency of the state's evidence on attempted burglary in the second degree.

I fully realize that the trial court enjoys a wide discretion on reopening the presentation of evidence in

a criminal case. See *State* v. *Brigandi,* 186 Conn. 521, 442 A.2d 927 (1982). Several things, however, concern me on this reopening. The defendant's motion to dismiss was not only timely, but was meritorious. I find no cognizable claim in this record of inadvertence by the state in failing to present this evidence—which was an essential element of the crime—as part of its case-in-chief. There is actual prejudice to the defendant; without the additional evidence he could not on this record be convicted, as a matter of law, of the charged crime of attempted burglary in the second degree. Moreover, no reasonable tactical counter to this new evidence could be made by the defendant even if he so chose.

I agree that "a trial is not a game of technicalities, but one in which the facts and truth are sought." *Eskridge* v. *State,* 258 Ind. 363, 369, 281 N.E.2d 490 (1972). The insufficiency of evidence that results from the failure of the state to adduce evidence of an essential element of the crime is not a technical matter but one affecting substantial rights. See Black's Law Dictionary (Rev. 5th Ed. 1979). We properly accord the exercise of discretion in this area a wide ambit. The state, however, still has the duty to prove every essential element of the crime charged.[3] *In re Winship,* 397

[3] In footnote 3, supra, the majority cites *State* v. *Watson,* 165 Conn. 577, 345 A.2d 532 (1973), and implies that *Watson* stands for the proposition that the trial court should, in all cases, allow the state to reopen its case in order to present evidence which proves the crime charged. A closer examination of that decision, reveals, however, that it is inapposite to the present appeal. In *Watson* the pertinent crime charged was unlawful possession of an unlicensed weapon in a motor vehicle. See General Statutes § 29-38. Four defendants, Watson, Stromen, Carter, and Evans, were appealing their convictions in that case. A fifth individual, Smith, was the driver of the motor vehicle in question. The trial court allowed the state, "[a]fter all parties had rested, but before arguments to the jury had commenced"; id., 594; to reopen its case in order to examine Smith regarding whether he had a permit for the gun at issue. While holding that a portion of § 29-38 was constitutionally invalid, and, therefore, constituting the basis for reversing the four defendants' convictions under that provision; id., 597–98; this court

U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978); see *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). In the present case, the state's evidence was insufficient when the state rested and, on this record, the cause of justice would have been served in submitting the case to the jury only on attempted burglary in the third degree. In countering any assertion that the motion to reopen was properly granted in the furtherance of justice, I respectfully disagree.

Therefore, I dissent.

stated that the reopening in that case "was not an abuse of the court's discretion." Id., 594.

Unlike the present case in which the reopening allowed the introduction of *that* evidence which was the *only* evidence of an essential element of the crime, the state in *Watson* "had already presented evidence that none of the four defendants had had a gun permit . . . . " Id. Unlike the present case in which the evidence introduced by the state on reopening in and of itself proved an essential element of the statutory offense, in *Watson* "[t]he evidence presented by the state after the motion to open did not rule out the fact that the Smith who accompanied the defendants did not have a permit." Id., 595.

Because the *language* in *Watson* upon which the majority dwells is pure dictum due to the ultimate basis of the resolution of that appeal on a completely different ground, I respectfully disagree with the majority's contention that *Watson* controls the abuse of discretion claim asserted in this appeal.