## STATE OF CONNECTICUT *v.* BRUCE E. RODGERS
## (11842)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and KLINE, Js.

Argued October 2—decision released December 17, 1985

*John J. Kindl,* special public defender, for the appellant (defendant).

*Corinne L. Klatt,* deputy assistant state's attorney, with whom were *Peter D. Markle,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

DANNEHY, J. A jury found the defendant guilty of sexual assault in the first degree; General Statutes § 53a-70 (a); and of criminal attempt to commit murder. General Statutes §§ 53a-54 (a) and 53a-49 (a). He claims on appeal that the trial court erred: (1) in instructing the jury on the issue of insanity when no instruction was requested and no evidence of insanity was presented; (2) in instructing the jury on circumstantial evidence; (3) in instructing the jury on sexual assault in the first degree when the uncontroverted evidence revealed that the victim was unconscious when penetration occurred; (4) in instructing the jury that under the evidence presented it could find the defendant possessed the requisite intent to commit both sexual assault and murder; (5) in denying his motion for severance and his motions for judgment of acquittal and for a new trial. We agree with the defendant's first and second claims and, accordingly, vacate the judgment and remand for a new trial. Our disposition of this case makes it necessary to consider only those claims and other matters which could possibly arise on a subsequent retrial of the case.

The defendant did not take the witness stand in his own behalf or offer any direct evidence at trial. The victim testified that on the night of August 14, 1980, she had been working at a stag party. When the party ended, she accompanied her employer and his wife to a local bar. There she met the defendant. They talked and consumed several beers. After about an hour, the victim and the defendant left on the defendant's motor-

cycle for a second bar where they tarried until closing time. Shortly after they exited the second bar, it began to rain. They then proceeded to the defendant's house in order to get his car.

The victim testified that while riding in the defendant's car she fell asleep. She awoke to find the defendant with his hands around her throat, choking her. The victim testified that during the time the defendant was choking her, "[h]e was asking me where my friends were. Where are they now? What are they going to do and how are they going to help me." As to the actions of the defendant, she stated, "[h]e was squeezing [my neck], squeezing it to the point where I couldn't talk or breathe anymore. Then I blacked out." When the victim regained consciousness, she found herself on a pile of rocks on the side of the road, with her shoes, underpants and purse scattered nearby. Her rectum was very sore. On cross-examination, the victim reasserted that she had no pain in her rectum prior to being rendered unconscious and that she was positive that the injury was not caused by any person other than the defendant.

Several witnesses corroborated the victim's testimony that she had been with the defendant on the evening of August 14, 1980, and that they had left the second bar together. An examination of the victim's dress and underpants, which had been washed prior to the incident, revealed the presence of seminal stains. Further testimony established that the victim had sustained permanent injury to her third vertebra, explained in medical testimony as a broken neck.

We address first the defendant's claim that the trial court committed reversible error by instructing the jury on the issue of insanity. At trial, the defendant did not raise the defense of insanity, and the record demonstrates that the state presented no evidence that placed

the defendant's sanity in issue for resolution by the jury. Indeed, the state, along with the defendant, excepted to this portion of the trial court's charge.

The trial court should submit no issue to the jury which is foreign to the facts in evidence, or upon which no evidence was offered, and it should not submit to the jury considerations which find no support in the evidence. *State* v. *Cofone,* 164 Conn. 162, 168, 319 A.2d 381 (1972); see *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975). The test usually applied in determining whether there is error in a charge is that the charge must be correct in law, adapted to the issues and sufficient for the guidance of the jury. *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982); *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980). If the charge meets this test it will ordinarily be sustained though not in all respects exhaustive, perfect, or technically accurate. Although this case was tried before the 1983 amendments to General Statutes § 53a-13 made the defense of insanity an affirmative defense, our case law was nonetheless well settled that the issue of insanity is not properly raised until "substantial evidence" tending to prove insanity has come into the case. *State* v. *Rossier,* 175 Conn. 204, 209, 397 A.2d 110 (1978); *State* v. *Davis,* 158 Conn. 341, 355–56, 260 A.2d 587 (1969); *State* v. *Kenyon,* 134 Conn. 43, 49, 54 A.2d 585 (1947). In this case the defendant would not have been entitled to an instruction on the issue of insanity because the question of his sanity never came into the case. For the same reason, the trial court erred by submitting that issue, sua sponte, to the jury. Cf. *State* v. *Young,* 191 Conn. 636, 648–49, 469 A.2d 1189 (1983). We do not consider the state's claim that this error was harmless because it is unnecessary in view of the result reached on the defendant's second claim of error.

The defendant next claims that the trial court erred in its instructions to the jury regarding circumstantial

evidence. The defendant duly excepted to the following italicized portions of the trial court's charge: "Now, circumstantial evidence. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of the law are satisfied. One, that the fact from which you are asked to draw the inference has itself been proved beyond reasonable doubt. Two, that the inference that has to be drawn is not only logical and reasonable but is strong enough so that you can find that it is *more probable that the fact to be inferred is true.*" (Emphasis added.) The defendant claims that the requisite standard of proof beyond a reasonable doubt was impermissibly diluted by the trial court's instruction that an inference may be drawn provided "that it is more probable that the fact to be inferred is true." We agree.

Circumstantial evidence is evidence offered to prove a certain fact from which the jury is asked to infer, and so to find, the existence of another fact in issue. The jury must initially find that the state has proved the basic fact, from which the jury is asked to draw the inference, beyond a reasonable doubt. If and only if the jury finds the basic fact to have been proved beyond a reasonable doubt may it go on to consider the inference. The inference drawn must be reasonable and logical, and not the result of speculation or conjecture. *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980). Further, the jury must be satisfied that the fact to be inferred *has been proved* beyond a reasonable doubt. The state argues that " '[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circum-

stantial evidence.' " *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981); see *State* v. *Martin,* 195 Conn. 166, 173, 487 A.2d 177 (1985). While this is unquestionably true, it is not meant to imply that the jury may find the existence of inferred facts by less than proof beyond a reasonable doubt. The law makes no distinction as to the probative effect of direct and circumstantial evidence. *State* v. *Englehart,* 158 Conn. 117, 119, 256 A.2d 231 (1969); *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258 (1966). By the same token, the standard of proof as to inferred facts is no less than that applied to basic facts.[1]

Ordinarily, for a determination of whether the jury has been misled, a charge is to be read as a whole, and detached clauses are not to be considered by themselves but in connection with the whole. *State* v. *Marra,* 195 Conn. 421, 440–41, 489 A.2d 350 (1985). We cannot bring the case within the purview of this rule. Much of the evidence produced by the state was circumstantial evidence, especially that bearing on the issue of criminal intent as it related to the crimes charged in the substitute information. The instruction challenged is contained in that portion of the charge dealing with the general principles of law applicable in a criminal case,[2] when the trial judge was engaged in defining to the jury the important subject of burden of proof. *State* v. *DelVecchio,* 191 Conn. 412, 420, 464 A.2d 813 (1983).

---

[1] Our discussion is concerned with only those facts essential to prove an element of the crime. "There must be proof beyond a reasonable doubt of all the elements of the crime and the defendant's participation or responsibility, but *not* of each evidentiary fact." (Emphasis added.) LaFave & Scott, Criminal Law (1972) § 4, p. 16. It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt.

[2] The trial court twice gave this instruction to the jury, once during its general instructions on burden of proof, and again during its specific instructions on the elements of sexual assault in the first degree.

The present case particularly called for a correct instruction on the meaning and utilization of circumstantial evidence in a criminal case. There exists such a contradiction between the erroneous instruction and the admixture of correct doctrine that as a whole it cannot be said that the incorrect statement did not influence the jury.

A final argument raised by the state also merits consideration. We have consistently rejected the claim "that when any circumstance offered in evidence is susceptible to two inferences, one of which is in favor of guilt and the other of innocence, the circumstance must be disregarded and cannot be taken into consideration by the trier in reaching its conclusion." *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955); *State* v. *Morrill,* 193 Conn. 602, 610–11, 478 A.2d 994 (1984); see also *State* v. *Dumlao,* 3 Conn. App. 607, 616–20, 491 A.2d 404 (1985). From this the state concludes that the fact ultimately inferred by the jury must necessarily be established by a lesser standard than proof beyond a reasonable doubt. We disagree with the state's conclusion.

It offends neither logic nor reason that a particular fact may give rise to contradictory inferences. The inference ultimately drawn by the jury need not be the only rational inference possible. Our law confides to the jury the difficult task of deciding among often conflicting inferences which logically and reasonably may flow from the same basic fact. In its consideration of the evidence the jury must rely on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact. *State* v. *Carter,* 196 Conn. 36, 45, 490 A.2d 1000 (1985). The facts essential to an element of the crime, however, whether basic or inferred, must be found proved beyond a reasonable doubt. We find that the trial court erred

by instructing the jury that an inference may be drawn if "it is more probable that the fact to be inferred is true."

We next consider various claims raised by the defendant in which there is no error but which may recur on retrial. The defendant claims that the trial court erred in its instructions to the jury on the crime of sexual assault in the first degree. The gist of this claim is that under General Statutes § 53a-70 an accused cannot be found guilty of sexual assault in the first degree when the victim is unconscious during the assault. The defendant renewed this claim in support of his motions for judgment of acquittal and for a new trial.

General Statutes § 53a-70 (a) provides that a "person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury to such person . . . . " Thus, compulsion is an essential element of the crime of sexual assault in the first degree, either by the actual use of force or the threat of use of force which reasonably causes fear of physical injury. The defendant contends that because compulsion connotes the domination of another against his active will, a victim who is unconscious and, therefore, without will to resist cannot be compelled to engage in an act of sexual intercourse. The defendant argues that the legislative history of our sexual assault statutes supports his contention that General Statutes § 53a-70 was not intended to impose criminal liability where the victim is not conscious of the sexual assault.

Prior to 1975, sexual intercourse "by forcible compulsion" and sexual intercourse with one "who is incapable of consent by reason of being physically help-

less'' were both considered rape in the first degree as proscribed by General Statutes (Rev. to 1975) § 53a-72. In that year, § 53a-72 was repealed and its provisions divided between our present § 53a-70, sexual assault in the first degree, and § 53a-71, sexual assault in the second degree. Public Acts 1975, No. 75-619. While our first degree sexual assault statute retained the element of sexual intercourse by forcible compulsion, sexual intercourse with a person who is "mentally incapacitated or physically helpless" became one of the statutory variants of sexual assault in the second degree. General Statutes § 53a-71 (a) (2) and (3). Our statutes define "physically helpless" to mean "a person [who] is unconscious or for any other reason is physically unable to communicate unwillingness to an act." General Statutes § 53a-65 (6).

We agree in part with the defendant's argument, but not with its application to this case. We agree that General Statutes § 53a-70 does not include sexual intercourse with a victim whom the assailant finds unconscious. Here, however, the victim testified that the defendant strangled her into a state of unconsciousness. It would be bizarre indeed to find that the legislature, in enacting the 1975 amendments to our sex crimes statutes, intended to impose a lesser degree of responsibility for sexual assault upon a person, who, by his own hand, renders the victim physically helpless and thus "unable to communicate unwillingness to an act." General Statutes § 53a-65 (6). This court traditionally eschews construction of statutory language which leads to absurd consequences and bizarre results. *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985); *Maciejewski* v. *West Hartford,* 194 Conn. 139, 152, 480 A.2d 519 (1984); *Milano* v. *Warden,* 166 Conn. 178, 187, 348 A.2d 590 (1974); *Hartford Electric Light Co.* v. *Water Resources Commission,*

162 Conn. 89, 103, 291 A.2d 721 (1971). We find that the trial court properly instructed the jury on the crime of sexual assault in the first degree.

We next consider the defendant's claim that the trial court erred by refusing his request to instruct the jury that under the evidence presented he could not be found guilty of both sexual assault in the first degree and attempted murder. The underlying act upon which the attempted murder charge was based was the defendant's strangulation of the victim. This same act of strangulation, resulting in the victim's loss of consciousness, was also the only evidence of the use of force necessary to sustain a conviction for sexual assault in the first degree. The defendant contends that in performing this act he could not have possessed both the intent to commit murder and the intent to commit sexual assault in the first degree.

The mental state associated with the crime of attempt to commit murder is the "intent to cause the death of another person." General Statutes §§ 53a-49 (a) and 53a-54a (a). Sexual assault in the first degree is a "general intent crime with no element of specific intent." *State* v. *Johnson,* 185 Conn. 163, 176, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Truppi,* 182 Conn. 449, 454–55, 455 n.4, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). Normally, the force used in the course of committing sexual assault in the first degree is that necessary to compel the victim to engage in sexual intercourse. Where, however, as here, the defendant himself renders the victim physically helpless and unable to communicate her unwillingness to consent, the use of force need not be undertaken solely for the purpose of compelling the victim to engage in sexual intercourse. A contrary holding would result in reduced culpability for a defendant

who causes his victim to lose consciousness, by whatever means, prior to committing an act of sexual assault.

Even if we were to accept the defendant's argument that in strangling his victim he could not simultaneously have intended to commit both murder and sexual assault in the first degree, he would not prevail. On the facts of this case, it was not necessary that the defendant intended to sexually assault his victim as he strangled her. It is enough that after having caused her to lose consciousness by breaking her neck, he did commit the sexual assault. We conclude that the trial court properly refused to instruct the jury that the defendant could not be found guilty of both attempted murder and sexual assault in the first degree.

We address next the defendant's claim that the trial court erred in denying his motion for severance. We find no error.

The question of severance is within the sound discretion of the trial court and that discretion must not be disturbed unless it has been manifestly abused. *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). "The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant." *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952). "[A]n accused bears a heavy burden to show that the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance." *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); *State* v. *Bell,* 188 Conn. 406, 410-11, 450 A.2d 356 (1982).

The defendant claims that substantial prejudice resulted from the trial court's admission of hearsay testimony under the constancy of accusation exception to the hearsay rule. *State* v. *Ouellette,* 190 Conn. 84, 92, 459 A.2d 1005 (1983); *State* v. *Brice,* 186 Conn. 449, 453–54, 442 A.2d 906 (1982). At trial, Detective Howard Jones of the Waterbury police department was allowed to testify, over the defendant's objection, to the details of the alleged incident related to him by the victim. While this evidence of the victim's prior consistent statements was not admissible on the charge of attempted murder; *State* v. *Dolphin,* 178 Conn. 564, 568, 424 A.2d 266 (1979); the statements were admissible, under the constancy of accusation exception to the hearsay rule, on the charge of sexual assault.

We do not believe that the admission of Jones' testimony under these circumstances amounts to the substantial injustice necessary to find a manifest abuse of discretion. Jones' testimony was merely corroborative of facts to which the victim herself testified at trial. The trial court twice instructed the jury to consider this testimony only with regard to the charge of sexual assault in the first degree, once before Jones testified and, again, in its charge to the jury. The limited purpose for which this evidence was admitted would not justify a severance of the sexual assault and attempted murder charges.[3]

The defendant also contends that joinder of these charges "impermissibly interfered" with his decision whether to testify in his own behalf. Before trial, the defendant advised the trial court of the "possibility of his desire to testify as to the charge of sexual assault

---

[3] Although the defendant did not object at trial nor raise the claim on appeal, we note that Jones was allowed to testify before the victim, in violation of our rules concerning the constancy of accusation exception. We suggest that the proper procedure be followed on retrial. See *State* v. *Brice,* 186 Conn. 449, 453–54, 442 A.2d 906 (1982).

and to present . . . evidence regarding his good character, specifically sexual morality and decency." The defendant conceded that in such event the state would attempt to introduce, on the issue of credibility, his prior convictions for robbery, burglary and larceny.

We have previously followed the reasoning in *Baker* v. *United States,* 401 F.2d 958, 976–77 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970), that " 'no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.' " *State* v. *King,* supra, 307. We are satisfied that the defendant has made no such showing here, and we find no error by the trial court in denying the motion for severance.

Finally, the defendant urges error in the refusal by the trial court to grant his motions for judgment of acquittal and for a new trial. As both of these motions were based on a challenge to the sufficiency of the evidence, we consider them together for purposes of review. We find no error.

"The standard that applies when a jury verdict is challenged on the ground of insufficient evidence is well established. 'When a verdict is challenged because of insufficient evidence, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that

the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Heinz,* 193 Conn. 612, 625, 480 A.2d 452 (1984); *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222 (1976). The evidence must be given a construction most favorable to sustaining the jury's verdict." *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985).

Our holding with respect to claims already addressed in this opinion disposes of the defendant's renewed claim that the evidence of intent was insufficient to sustain a finding of guilt for both the crimes of attempted murder and sexual assault in the first degree. The jury could reasonably have found that the defendant, when he choked the victim until she lost consciousness, intended to cause her death. Further, the jury could reasonably have concluded that the defendant in fact caused the victim to lose consciousness, and thereafter engaged in sexual intercourse with her as defined in General Statutes § 53a-65 (2). See *State* v. *Kish,* 186 Conn. 757, 763, 443 A.2d 1274 (1982).

The defendant next argues that the evidence of penetration was insufficient to sustain his conviction for sexual assault in the first degree. We must disagree. The victim testified that the defendant strangled her until she became unconscious. When she awoke her underpants had been removed and her rectum was sore. Seminal stains were found on her dress and underpants, both of which had been washed prior to her wearing them on the evening in question. The chief medical examiner testified that seminal stains could not survive the washing of clothes.

Dr. James Thomas, a gynecologist who examined the victim the day after the incident occurred, found a "fissure" just below her vaginal opening. He testified that the fissure was "consistent with rectal penetration

either with a penis or some type of object." He further expressed the opinion that "[s]ome type of large diameter object that was pushed into that area (the rectum) without relaxation could cause a split in the tissue like that." We find that the cumulative effect of the evidence as it relates to the issue of penetration is sufficient to sustain a finding of guilt beyond a reasonable doubt of sexual assault in the first degree.

We find that the trial court did not err in denying the defendant's motions for judgment of acquittal and for a new trial on the basis of the insufficiency of the evidence.

There is error in part, the judgment is set aside and the case is remanded for a new trial.

In this opinion PETERS, C. J., SANTANIELLO and KLINE, Js., concurred.

SHEA, J., dissenting. Although I agree with the remainder of the majority opinion, I would find error in the refusal of the trial court to charge the jury that, upon the evidence presented, the defendant could not be found guilty of both attempted murder and sexual assault in the first degree.

A person who renders his victim unconscious and then has sexual intercourse with her in that condition commits sexual assault in the first degree, provided that he had such a purpose in mind at the time he was using force on the victim. He would have then compelled "another person to engage in sexual intercourse by the use of force against such other person" in violation of General Statutes § 53a-70. If the use of force was with the intention of killing the victim, however, as required for a conviction of attempted murder under General Statutes §§ 53a-49 and 53a-54a, the actor could not simultaneously have harbored the purpose of having intercourse with a living victim, as is essential for first

degree sexual assault. The concurrent intention he might have entertained could have been only to have sexual contact with a dead body, involving the crime of sexual assault in the fourth degree. General Statutes § 53a-73a (a) (3). In this case, therefore, the jury could not reasonably have found that the defendant, while he was using force, intended both to kill the victim and to have intercourse with her while she was alive, given the sequence that the sexual assault followed the attempt to murder, as the evidence unquestionably established.

Accordingly, I dissent.