STATE OF CONNECTICUT *v.* LUIS PEREZ
(4548)

HULL, DALY and BIELUCH, Js.

Argued December 11, 1986—decision released March 31, 1987

*G. Douglas Nash,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald Browne,* state's attorney, and *Henry J. Lyons,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant in this case was charged in a two part information with burglary in the third degree in violation of General Statutes § 53a-103[1] and with being a persistent serious felony offender in violation of General Statutes § 53a-40 (b).[2] After a trial by a jury,

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-40 (b) provides in pertinent part: "A persistent serious felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime."

the defendant was found guilty of the first count. He then pleaded guilty to the second part of the information.

The defendant claims on appeal that the trial court violated his state and federal rights to due process when it improperly charged the jury on circumstantial evidence, inferences and burden of proof, thereby impermissibly diluting the state's burden of proof.[3] We find no reversible error.

The jury could reasonably have found the following facts. On the morning of May 7, 1984, the complainant was sleeping in a second floor bedroom of her grandmother's home in Easton. Shortly before noon she was awakened by the sound of a car in the driveway located beneath the bedroom window. She went to the window and observed a yellow car occupied by a man and a woman. The man, who walked with a limp, went to the front door and rang the door bell several times. The complainant did not answer, and the defendant then went to the back door and rang the back door bell several times. Shortly thereafter, the complainant heard a beep signifying that the burglar alarm had been activated indicating that someone had entered the house. She ran into the bathroom adjacent to the bedroom and soon heard footsteps in the bedroom. She emerged from the bathroom and saw a man wearing gloves removing the pillowcase from her pillow. When she confronted him, he stated that he was in the wrong house and departed. The complainant immediately telephoned her mother and the police, both of whom arrived a short

---

[3] The defendant correctly asserts that a state may, in construing its own constitution, provide greater protection than does the federal constitution. We agree that Connecticut appellate courts have done just that on several occasions. See, e.g., State v. Kimbro, 197 Conn. 219, 496 A.2d 498 (1985). In this instance, however, the defendant has not provided an analysis which demonstrates that there is a state claim which is independent and different from the federal claim.

time later. The complainant gave a description of the intruder and his car to the police. Within hours, a car matching the description was located in Bridgeport, and it was determined that the car was registered in the defendant's name. The defendant entered a nearby grocery store but emerged at the request of the police. When questioned, he denied that he had been in Easton that day and claimed further that he had reported his car as stolen to the Bridgeport police. After some initial confusion, the latter claim was verified. The complainant was taken by the police to Bridgeport, driven past the grocery store and asked if she recognized anyone in front of it. She identified the defendant and when the cruiser made a return trip past the store, she again identified the defendant as the culprit. The yellow car which was registered in the defendant's name was pointed out to the complainant who identified it as the one which had been parked in her grandmother's driveway earlier that day. At police headquarters, she viewed an array of six photographs and picked out the defendant's picture. From the judgment rendered on the conviction, this appeal ensued.

The central issue in this appeal involves the trial court's instruction to the jurors that they could draw inferences from circumstantial evidence "provided two elements . . . [are] satisfied. First, the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt and, second that the inference that you are asked to draw is not only logical and reasonable, but is strong enough so that you can find that *it is more probable than not* that the fact to be inferred is true." (Emphasis added.) The defendant contends that this charge unconstitutionally diluted the state's burden of proving each essential element of the crime charged beyond a reasonable doubt.

Initially, we note that the defendant neglected to except to this portion of the charge. While such a fail-

ure would usually render a claim of error unreviewable on appeal; Practice Book §§ 854, 4185 (formerly § 3063); we conclude that this claim falls within the "exceptional circumstances" of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *Moss,* 189 Conn. 364, 365–66, 456 A.2d 274 (1983). The defendant's claim implicates the fundamental constitutional presumption that a defendant is innocent until the state establishes his guilt beyond a reasonable doubt. This claim is similar to other instructional error claims regarding intent which the appellate courts of this state have found reviewable. See *State* v. *Whelan,* 200 Conn. 743, 755, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Wright,* 9 Conn. App. 275, 277, 518 A.2d 658 (1986). We therefore review this claim.

In recent years, there has been a rapid and significant growth in Connecticut case law on jury charges involving circumstantial evidence, inferences drawn therefrom and the accompanying standard of proof. In *State* v. *Farrar,* 7 Conn. App. 149, 153, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986), this court distinguished and reconciled the seminal cases in the area, *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), and *State* v. *Reddick,* 197 Conn. 115, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). The *Farrar* court concluded that the analyses in *Rodgers* and *Reddick* were consistent with the rule that a court's instructions must be reviewed with reference to the factual issues in the case. "Where the principal factual issue is intent, which is characteristically proven by circumstantial evidence; see *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986); the trial court's instructions regarding the use of circumstantial evidence as proof of this essential element are subject to close scrutiny. See *State* v. *Rodgers,* supra, 58. Where . . . the principal factual issue is iden-

tity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence. See *State* v. *Reddick,* supra, 133." *State* v. *Farrar,* supra, 155–56. This analysis was specifically adopted by our Supreme Court in *State* v. *Whelan,* supra.

While the defendant's primary defense in this case was that the only eyewitness mistakenly identified him as the intruder, the defendant also challenged the sufficiency of the state's evidence on the element of intent. The defendant claimed that even if the state had proven that he was the intruder, it had not proven that he possessed the "intent to commit a crime" in the house, a prerequisite to a conviction of burglary. The defendant therefore, requested and was granted a jury instruction on the lesser crime of criminal trespass. Thus, intent, which is usually proved by circumstantial evidence, was a disputed issue in this case.

As in *Rodgers,* this case particularly called for an instruction on the meaning and utilization of circumstantial evidence. In an intent case, *Rodgers* and its progeny mandate that we examine the jury instruction with "close scrutiny." At trial, the state argued that the circumstances surrounding the incident indicated the defendant's intent, i.e., breaking and entering the residence, wearing gloves and taking a pillowcase. Since the jury had been told that it could draw an inference from facts proven, where "it is more probable than not that the fact to be inferred is true," the jury was permitted to draw an inference on the defendant's intent from the circumstantial evidence, based on an erroneous "more probable than not" standard. We conclude that it was reasonably possible that the jury was misled with respect to the state's burden of proving

intent beyond a reasonable doubt since the charge left unclear the state's burden of proving inferences drawn from circumstantial evidence beyond a reasonable doubt. *State* v. *Whelan,* supra, 757; *State* v. *Hoeplinger,* 9 Conn. App. 147, 159, 517 A.2d 632 (1986).

The state argues that even if the charge amounts to constitutional error, it should be deemed harmless through application of the harmless error test. The state bases this argument on the recent case of *Rose* v. *Clark,* 478 U. S. 570, 583–84, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), which held that as a matter of federal constitutional law, a harmless error test must be applied to a *Sandstrom*[4] violation. Further, the *Rose* court explained that "harmless error" in this context focuses, not on whether the charge was misleading to the jury, but on whether, notwithstanding the misleading nature of the charge, the evidence on the issue was so strong that the reviewing court concludes beyond a reasonable doubt; see *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); that the error did not contribute to the guilty verdict. Connecticut jurisprudence has been intimately involved in the development of federal harmless error analysis, and it is illuminating to examine that involvement.

---

[4] *Sandstrom* held that the Due Process Clause of the fourteenth amendment was violated by a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts," *Sandstrom* v. *Montana,* 442 U.S. 510, 526–27, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The "pivotal concept of *Sandstrom* is that the *possibility* that the jury reached its decision in an impermissible manner requires reversal even though the jury may also have reached the same result in a constitutionally acceptable fashion." (Emphasis in original.) J. Schmolesky, *"County Court of Ulster County* v. *Allen* and *Sandstrom* v. *Montana:* The Supreme Court Lends an Ear but Turns it Face," 33 Rutgers L. Rev. 261, 272 (1981), cited in *Connecticut* v. *Johnson,* 460 U.S. 73, 85 n.13, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983).

In *State* v. *Truppi,* 182 Conn. 449, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981), our Supreme Court held that a harmless error test cannot be applied to a *Sandstrom* type error.[5] The court reasoned that "[s]ince the defendant's jury reasonably could have relied on a 'no evidence' standard in determining intent . . . they may reasonably have failed to consider the evidence . . . ." *State* v. *Truppi,* supra 466. In *Truppi,* the state, as here, urged the court to find that the evidence was so overwhelming that it rendered the error harmless; that is, to find that it had no effect on the jury's verdict. The court refused to apply such an analysis, stating "[t]hat possibility is incompatible with both the societal interest in the reliability of these jury verdicts; see *Mullaney* v. *Wilbur,* 421 U.S. 684, 699, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); and the protection which a jury determination of guilt by the 'beyond a reasonable doubt' standard should guarantee to the defendant. Therefore we decline to weigh the evidence of guilt against the uncured damage done by the harmful portion of the instructions. To do otherwise would transfer to this 'court the jury's function of measuring the evidence by the appropriate legal yardsticks.' *Bollenbach* v. *United States,* 326 U.S. 607, 614, 66 S. Ct. 402, 90 L. Ed. 350 (1946)." (Footnotes omitted.) *State* v. *Truppi,* supra, 466. Significantly, the legal underpinnings of the *Truppi* decision were federal rather than state constitutional guarantees. Thus, the

---

[5] In *Truppi,* the erroneous instruction provided: "[A] man is presumed to have intended to do the acts which he did do. . . . Until [exculpatory] evidence . . . appears in the case, the jury must presume that the accused intended to commit such acts as the jury may find that he did commit and accordingly find that the requisite guilty intent was present, if as a matter of fact, it is shown that the acts done by the accused were in fact unlawful." (Footnote omitted.) *State* v. *Truppi,* 182 Conn. 449, 452–53, 438 A. 2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

continued vitality of the *Truppi* holding was inextricably linked to the development of federal harmless error guidelines.[6]

Three years after the *Truppi* decision, *Connecticut v. Johnson*, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983), which also involved *Sandstrom* type instructions, was argued and decided by the United States Supreme Court. The Supreme Court affirmed the decision of our state supreme court in *State v. Johnson*, 185 Conn. 163, 440 A.2d 858 (1981). The Connecticut court, relying on *Truppi*, never addressed the state's argument that the *Sandstrom* violation was subject to a harmless error analysis. The Connecticut court ruled that there were *Sandstrom* violations in various parts of the trial court's instructions and therefore reversed those counts affected by the erroneous charge.

Certiorari was granted on the specific issue of whether a *Sandstrom* violation can *ever* be harmless. Although the state decision was affirmed, there was no binding opinion on the merits of the case. In a 4-1-4 decision, the Court presented three arguments, yet no definitive answer as to whether a harmless error test can be applied to a *Sandstrom* violation. Consequently, state and federal courts have continued to make contradictory rulings.[7] In *Connecticut v. Johnson*, supra,

---

[6] When a state court confronts a question of federal constitutional law "it may not impose such greater restrictions as a matter of *federal constitutional law* when [the United States Supreme] Court specifically refrains from imposing them." (Emphasis in original.) *Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). Thus although the Connecticut supreme court can refrain from applying federal constitutional law when faced with state constitutional error, it cannot do so when faced with a federal constitutional error.

[7] "Compare, e.g., *Tucker v. Kemp*, 762 F.2d 1496, 1501–1503 (CA11 1985) (en banc) (applying *Chapman* harmless-error analysis), cert. pending, No. 85-6447, with *In re Hamilton*, 721 F.2d 1189, 1190–1191 (CA9 1983) (holding that *Sandstrom* error would be harmless only if intent was not contested at trial)." *Rose v. Clark*, 478 U.S. 570, 572 n.1, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

Justice Stevens concluded that no federal question was raised by the Connecticut supreme court's failure to address whether the *Sandstrom* error was harmless. He therefore concluded that certiorari was improvidently granted and should be dismissed. Because a fifth vote was needed to enter judgment, however, he concurred with the result of the decision to affirm the lower court while refraining from comment on the merits. Thus, although the supreme court had been confronted with the issue, it did not resolve it.

In *Rose* v. *Clark,* supra, the Court finally decided what had been left open in *Connecticut* v. *Johnson.* In *Rose,* instructions defining malice were challenged as violating the defendant's right to have his guilt proved beyond a reasonable doubt.[8] The Supreme Court granted certiorari limited to the question of whether a reviewing court could apply a harmless error analysis to a *Sandstrom* type error. The Court assumed that the lower court had properly concluded that the challenged instructions were erroneous, and held that a harmless error test should be applied to certain constitutional errors in a jury charge. The Court, citing *Chapman* v. *California,* supra, stated that it " 'reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681 [106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986)." *Rose* v. *Clark,* supra, 576. Noting the existence of limitations on the doctrine, however, the court delineated several types of error

[8] The challenged instruction provided in pertinent part: "All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the State has proven beyond a reasonable . . . doubt that a killing has occurred, then it is presumed that the killing was done maliciously." *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986).

which *require* automatic reversal, among them are: introduction of coerced confession; *Payne* v. *Arkansas,* 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 (1958); denial of the right to counsel; *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); and trial before a biased judge; *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). Thus, not all errors are subject to harmless error analysis. The cases not subject to a harmless error analysis are, according to the Court, "the exception and not the rule." When a jury is instructed to presume malice from "predicate facts," it must still find the existence of those facts beyond a reasonable doubt. *Rose* v. *Clark,* supra, 582. Often, "the predicate facts conclusively establish intent"; id., so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury.

The Circuit Court of Appeals in *Rose* had concluded that an error in an instruction on malice which shifts the burden of proof could never be harmless if the defendant contests intent. The Supreme Court disagreed. "[O]ur harmless error cases do not turn on whether the defendant conceded the factual issue on which the error bore. Rather, we have held that '*Chapman* mandates consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless.' *United States* v. *Hasting,* 461 U.S. [499] at 509, n. 7 [103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983)]. The question is whether, 'on the whole record . . . the error . . . [is] harmless beyond a reasonable doubt. Id., 510." *Rose* v. *Clark,* supra, 583. *Chapman* v. *California,* supra, 24, states "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (Citations omitted.)

A *Rodgers* violation does not reach the seriousness of a *Sandstrom* violation because it does not completely

shift the burden of proof from the state to the defendant. It merely dilutes the state's burden, while leaving it on the state. Clearly, since a *Sandstrom* error must now be subjected to a harmless error analysis under *Rose* v. *Clark,* a less serious *Rodgers* error must be as well.[9] Thus, we apply the test to the present case.

As noted earlier, we conclude that the instructions given in this case dilute the state's burden of proving guilt beyond a reasonable doubt and are therefore erroneous. The question remaining for our consideration then is whether, on the whole record, the constitutional error was harmless beyond a reasonable doubt. *Rose* v. *Clark,* supra; *Delaware* v. *Van Arsdall,* supra; *Chapman* v. *California,* supra. That is, is it clear beyond a reasonable doubt, that the erroneous instruction did not contribute to the jury's verdict? We conclude that the error is harmless.

The evidence in this case showed that the defendant, wearing gloves on a spring morning, methodically and deliberately rang the front door bell and then the back door bell of the home of a complete stranger; finding no one at home he then used a screwdriver to force open the locked back door of the house, setting off a burglar alarm. The defendant walked upstairs to a bedroom and took a pillowcase from one of the beds. When confronted by the complainant the defendant stated that he was in the wrong house and fled. Within hours, the complainant made three separate positive identifications of the defendant, and his car. In addition, the complainant testified that the intruder walked with a limp, and the defendant was apprehended wearing a shoe on his left foot but only a white sock on his right foot which appeared very bulky. A pair of crutches was discovered in his car.

---

[9] We note that a *Reddick* error must now be subjected to a harmless error test as well.

It is a basic principle of law that common sense is not to be left at the courtroom door. *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985). "Similarly, in a burglary case, from the evidence of an attempt to make a forcible entry it is reasonable for the jury to infer an intent to commit theft." Id., citing *United States* v. *Thomas,* 444 F. 2d 919, 924 (D.C. Cir. 1971); *State* v. *Johnson,* 100 Wash. 2d 607, 625, 674 P. 2d 145 (1983). In this case, there was an actual forced entry, not simply an attempted entry. In addition, the culprit was seen wearing gloves and carrying a pillow case. "Common experience tells us that an unlawful entry into a dwelling . . . is not without purpose. Nor are people accustomed to enter homes of strangers through a [jimmied locked door] for innocent purposes. To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft." (Citations omitted). *State* v. *Zayas,* supra, 617; *State* v. *Grant,* 6 Conn. App. 24, 33, 502 A.2d 945 (1986).

One would have to suspend reason to find that the defendant had broken into the house in this case intending to do anything other than commit a crime. In our view, the evidence overwhelmingly demonstrates that the defendant had the requisite "intent to commit a crime therein." Thus, we are convinced beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's verdict.

There is no error.

In this opinion the other judges concurred.