STATE OF CONNECTICUT *v.* PETER J. BUTLER
(4329)

HULL, DALY and STOUGHTON, Js.

Argued February 10—decision released July 28, 1987

*Timothy H. Everett,* with whom, on the brief, were *Stephen Prignano* and *Mona Camhe,* certified legal interns, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. This is an appeal from a judgment of conviction after a trial to a jury. In a substitute infor-

mation, the defendant was charged with sexual assault by threat of use of force in the first degree, a violation of General Statutes § 53a-70 (a).[1] He has appealed from the judgment, claiming that the trial court committed the following errors: (1) its general instruction on the rule of circumstantial evidence and its reference to that rule during its instructions on the elements of sexual assault and accessorial liability diluted the state's burden of proof beyond a reasonable doubt; (2) its instructions on sexual assault diluted the state's burden of proof when it charged the jury that the standard to be applied was whether a reasonably prudent person, under all the circumstances then and there prevailing, would more probably than not be caused to fear physical injury by such threat of use of force; and (3) it violated the defendant's rights of confrontation, compulsory process and due process of law when it excluded certain evidence pursuant to General Statutes § 54-86f (4).

The jury might reasonably have found the following facts. On March 3, 1984, the defendant was with John Rainieri and Nicholas Mainiero at the Trumbull Shopping Mall. There, they met the victim, a young woman who had known Mainiero before that date. The young woman accepted an invitation to go to a party in Stratford. The four left the mall in the defendant's automobile, but instead went to the defendant's apartment. They went to a bedroom, and one of the men produced a bottle of rum. Each of the men drank, and the young woman also had some rum after she had been threatened with harm if she refused. The victim went to a bathroom, where Mainiero tried to kiss her and to take her shirt off. She said that she wanted to go home, and

---

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse . . . by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury . . . ."

she went back to the bedroom. When she tried to get up from a chair, she fell to the floor. The victim pulled herself onto the bed, where Mainiero pulled her to himself. Rainieri and the defendant left the room, after which Mainiero forced the victim to have intercourse with him. Rainieri and the defendant returned to the room, and Rainieri and Mainiero forced the victim to perform oral sex on them. Finally, the defendant had intercourse with the victim. During these events, the victim was verbally and physically threatened by Mainiero and Rainieri. The defendant did not himself utter any threats, but he was present in the room much of the time. After the defendant was finished, the victim was driven home where she became hysterical and told her sister that she had been raped.

The identity of the defendant was not an issue. The real issue in the case was whether the defendant had compelled the victim to engage in sexual intercourse by the threat of use of force which reasonably caused her to fear physical injury. There was no evidence that the defendant had himself uttered threats, but there was evidence that the other participants did so and that the defendant was present while some of those threats were made. The trial court charged on accessorial liability, and the jury could reasonably have found that the three men each participated in the assault.

The defendant's first claim of error arises out of the use by the trial court of a "more probable than not" instruction on circumstantial evidence. This claim of the defendant is supported neither by a request to charge nor by an exception to the charge as given. Nevertheless, review of this kind of charge has been granted in several recent cases under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *McKenna,* 11 Conn. App. 122, 134–35, 525 A.2d 1374 (1987), and cases cited therein.

In its general instructions, the court charged the jury as follows: "Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements are satisfied. One, that the fact from which you are asked to draw the inference has itself been proven to your satisfaction beyond a reasonable doubt. And, two, that the inference asked to be drawn is logical and reasonable, and strong enough so that you can find that it is *more probable than not* that the fact to be inferred is true." (Emphasis added.)

The state has the burden of proving beyond a reasonable doubt every element of the crime charged. The "more probable than not" instruction has been held to be erroneous, and we must determine whether it is reasonably possible that the jury was misled by the instruction as to the state's burden of proof of a disputed element which, we conclude, is characteristically proven by circumstantial evidence. See *State* v. *Perez,* 10 Conn. App. 279, 283–85, 523 A.2d 508 (1987).

The trial court instructed the jury that there are three elements to the crime of sexual assault in the first degree as charged: "One, a defendant compels another person to engage in sexual intercourse; two, by the threat of use of force against such other person; three, which reasonably causes such person to fear physical injury."

That the defendant had sexual intercourse with the victim was not a contested issue. Whether it was an act resulting from the threat of force was, however, an issue. Compulsion is an essential element of this

crime; *State* v. *Rodgers,* 198 Conn. 53, 60, 502 A.2d 360 (1985); which must be proven beyond a reasonable doubt.

Whether or not there was a threat of use of force arising from the defendant's participation in the events which took place, whether or not the victim was reasonably caused to fear physical injury, and whether or not she was thus compelled to have sexual intercourse with the defendant, were all facts to be inferred from the evidence.

Because in this case the defendant did not himself utter any threats before engaging in intercourse with the victim, he asserts that he did not threaten the use of force against the victim. Since the defendant was charged in the information with threatening the use of force and there was no direct evidence that the defendant threatened to use force, the state was required to prove that element of the crime through circumstantial evidence and the inferences drawn therefrom. That is, to prove by inference from the defendant's presence during, and complicity and or acquiesence in, the use of force and threats of use of force by the other men involved (which had been shown through direct evidence), that the defendant threatened the use of force in compelling the victim to engage in sexual intercourse with him.

The defendant argues that the court's instruction on circumstantial evidence diluted the state's burden of proving these inferences beyond a reasonable doubt. Although the court instructed the jury that the state bore the burden of establishing all of the elements of the crime beyond a reasonable doubt, it did not rectify its general charge on circumstantial evidence. See *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 1598 (1986). The jury was properly instructed that the defendant

must only have possessed a general intent to do the acts which the statute prohibits, and that ordinarily this must be inferred. It was also instructed, however, that inferences drawn from circumstantial evidence could be met by an erroneous more probable than not standard.

This court has recently held that the analysis used by the appellate courts of this state in *Whelan* and *Rodgers* type cases[2] applies not only to erroneous intent instructions, but also to "an erroneous charge which taints the jury's deliberative process or any disputed element of the crime charged which is primarily dependent on circumstantial evidence for its proof." *State* v. *Sullivan,* 11 Conn. App. 80, 96, 525 A.2d 1353 (1987).

As in *Sullivan,* this case particularly called for a proper instruction on the meaning and utilization of circumstantial evidence. Since the jury had been told that it could draw an inference from the facts proven, where "it is more probable than not that the fact to be inferred is true," the jury was permitted to draw an inference on whether the defendant threatened the use of force to compel the victim to have intercourse from circumstantial evidence based on an erroneous and diluted standard of proof. We conclude that it was reasonably possible that the jury was misled with respect to the state's burden of proving that the defendant threatened the use of force since the charge left unclear the state's burden of proving inferences drawn from circumstantial evidence beyond a reasonable doubt. *State* v. *Whelan,* supra, 757; *State* v. *Hoeplinger,* 9 Conn.

---

[2] In both *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 1598 (1986), and *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), the Connecticut Supreme Court analyzed "more probable than not," jury instructions on circumstantial evidence where the disputed issue was intent. Those cases concluded that when the principal factual issue is intent, the court's instructions regarding the use of circumstantial evidence as proof of intent are subject to close scrutiny. See also *State* v. *Farrar,* 7 Conn. App. 149, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

App. 147, 159, 517 A.2d 632 (1986), cert. granted, 202 Conn. 805, 520 A.2d 1286 (1987); see *State* v. *Sullivan,* supra, 93–98.

The state argues that, even if the charge was improper, it should be deemed harmless through application of the harmless error test. The state claims that *Rose* v. *Clark,* 478 U.S. 570, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), requires such analysis. We agree and note that this court has previously applied such an analysis when faced with a *Rodgers* intent case. *State* v. *Perez,* 10 Conn. App. 279, 288–90, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987). Since the *Rodgers-Perez* analysis, which includes the harmless error test, applies to "erroneous charge[s] which taint the jury's deliberative process on *any* disputed element of the crime charged which is primarily dependent on circumstantial evidence for its proof"; *State* v. *Sullivan,* supra, 96; we must apply the harmless error test to the erroneous instruction in this case.

In order to find this instructional error harmless despite the misleading nature of the charge, the evidence on the disputed issue of whether the defendant threatened to use force against the victim must be so strong that the reviewing court is compelled to conclude beyond a reasonable doubt that the error did not contribute to the guilty verdict. *State* v. *Perez,* supra, 285.

The evidence tending to prove that the defendant threatened the use of force against the victim while strong, is not "overwhelming." See *State* v. *Perez,* supra, 286. Thus, we are unable to conclude beyond a reasonable doubt that the evidence on this issue is so strong that the erroneous instruction did not contribute to the guilty verdict.

The defendant raised the defense of consent in this case. While he did not testify, he presented the defense

through other witnesses, including a coparticipant. There was testimony by one witness that the victim had been drinking prior to joining up with the trio, and that she was seen hugging and kissing one of the three. This witness also testified that the victim told him that she "went partying with these guys and she went . . . to bed with all of them." He further testified that "I asked her if they forced her and she said no." A coparticipant testified that he saw the victim in bed with the defendant and that she was neither crying nor struggling. He further stated that, while being driven home, the victim gave no indication that she was mad, upset or in pain and that she had a normal conversation with the defendant while in the car.

The evidence presented by the state in this case showed that the victim was compelled to commit acts of sexual intercourse with the defendant and two other men within a two or three hour period in the defendant's bedroom. One of the two friends of the defendant verbally threatened the victim while in the defendant's locked bedroom and while the defendant sat in a recliner chair near by. According to the victim, the defendant continued to sit in the chair as one of the other men "grabbed [her] by the back of [her] neck and [her] hair. And, he just pushed [her] head down" and forced her to perform fellatio. At that time "[the defendant] was still in the room, sitting in the chair. . . ." The victim was then forced down on the bed by one of the men by her shoulders and compelled to engage in vaginal intercourse while the defendant was "sitting in the red chair." Ultimately, the defendant also had intercourse with the victim.

Confronted with such conflicting evidence on whether the defendant threatened the use of force and the victim's alleged consent, we are unable to conclude that

the evidence was so overwhelming that it renders the error in the instruction harmless beyond a reasonable doubt.

In his final claim, the defendant argues that the court's exclusion of defense evidence and limitation of cross-examination regarding the victim's prior sexual conduct violated his rights to confrontation of witnesses, compulsory process and due process of law.

Prior to the trial, a hearing was held pursuant to General Statutes § 54-86f, the Rape Victim's Shield Law. The statute prohibits introduction, in sexual assault cases, of evidence of the prior sexual conduct of the victim, unless the evidence satisfies one of the exceptions to the statute's proscription. The statute provides for a hearing, out of the presence of the jury, to determine whether the probative value of the evidence outweighs its prejudicial effect on the victim. There was a pretrial hearing to determine admissibility, and the defendant renewed his motion at the trial.

The defendant claims the proffered evidence was admissible under two of the exceptions: it was offered on the credibility of the victim, and it was so relevant and material to a critical issue in the case, the consent of the victim, that to exclude it violated the defendant's rights of confrontation, compulsory process and due process. The court denied admission of the evidence.

At the hearing, the defendant introduced three witnesses whose testimony, viewed in the light most favorable to the defendant, tended to show that the victim had previously engaged in consensual sexual relations with persons other than the defendant prior to the sexual assault. The defendant argues that this evidence should have been admitted at trial to demonstrate a pattern of sexual conduct by the victim and to challenge her credibility.

"As a general principle, evidence is relevant if it has a tendency to establish the existence of a material fact. . . . The fact that a complaining witness may have consented to sexual relations with others before does not, without more, tend to establish that consent was given on the occasion in question." *State* v. *Mastropetre*, 175 Conn. 512, 517, 400 A.2d 276 (1978). Under General Statutes § 54-86f, evidence of prior sexual conduct is admissible only if it fulfills the requirements of the statute that its probative value outweighs its prejudicial effect, within the context of the facts and circumstances of the case in which it arises. *State* v. *Cassidy*, 3 Conn. App. 374, 384–85, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

The evidence sought to be introduced was not relevant to whether the victim consented to the sexual conduct on the night of the assault. The evidence, if believed, would have shown that the victim consented to intercourse with young men she had dated, and that she engaged in sexual relations with only one person on each occasion. The evidence offered by the defendant described conduct so dissimilar to the event of the night of the sexual assault that its inclusion would serve no purpose other than to embarrass the victim. The evidence failed to comport with the requirements of the statute and the defendant's asserted constitutional rights were not prejudiced by exclusion of it.

The defendant also claims that the evidence should have been admitted as relevant to the credibility of the victim. At the rape shield hearing, the victim testified, on direct examination by the defendant's attorney, that prior to the sexual assault she was a virgin. She did not testify at trial to her virginity. During the trial and out of the presence of the jury, Rainieri's attorney moved to admit the testimony elicited at the rape shield hearing, arguing that the victim's assertion of virginity, in light of contradictory testimony of other witnesses,

raised the issue of her credibility. The trial judge denied the motion, noting that absent an inconsistent statement, prior sexual history does not implicate veracity.

Generally, in a sexual assault case, evidence of prior sexual conduct may not be introduced to impeach the credibility of a complaining witness. *State* v. *Mastropetre,* supra, 518. Where the victim testified on direct examination to her chastity, the defendant may challenge such assertion on cross-examination with evidence of past sexual conduct. Id.; see also *State* v. *LaClair,* 121 N.H. 743, 745–46, 433 A.2d 1326 (1981) (trial court should have permitted cross-examination of the victim on her own inconsistent statements as to her virginity). General Statutes § 54-86f (2) permits introduction of such evidence on the issue of the victim's credibility provided the victim has testified on direct examination concerning her prior sexual conduct.

Although the victim's assertion of virginity was contradicted by other witnesses at the rape shield hearing, there was no claim that she made inconsistent statements about her past sexual history which would warrant exploration. Nor was her assertion of virginity relevant to any material issue in the case. See *State* v. *Talton,* 197 Conn. 280, 284–85, 497 A.2d 35 (1985). " 'It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473 [1964].' " *State* v. *Talton,* supra, quoting *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83 (1969). Furthermore, at trial, the defendant's cross-examination of the victim as to the events of the night of the sexual assault was detailed and unrestricted. The credibility of witnesses is principally tested by cross-examination. *State* v. *Esposito,* 192 Conn. 166, 179, 471 A.2d 949 (1984). The constitutional

standard for cross-examination is satisfied when defense counsel is allowed to expose to the jury facts from which the jurors could appropriately draw inferences as to the witness' reliability. *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984). Upon a finding that the standard has been met, it must be determined whether the trial court abused its discretion in refusing to permit proffered evidence, thus restricting cross-examination. Id.

The cross-examination of the victim was itself sufficient to enable the jurors to form opinions as to her credibility. Exclusion of the proffered evidence was a proper exercise of discretion as the probative value of that evidence was far outweighed by its prejudicial effect on the victim. Thus, the defendant's rights to confrontation and cross-examination were not curtailed.

Our resolution of the instructional error claim is dispositive. Although the defendant has raised other claims, it is not clear that the alleged errors will recur in the new trial. We therefore decline to review them.

There is error, the judgment is set aside and the case remanded for a new trial.

In this opinion the other judges concurred.