STATE OF CONNECTICUT *v.* GLEN CLINKSCALES
(7860)

DALY, NORCOTT and FOTI, Js.

Argued December 11, 1989—decision released May 8, 1990

*Jeffrey L. Fisher,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom were *James Clark,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), assault in the third degree in violation of General Statutes § 53a-61, and kidnapping in the second degree in violation of General Statutes § 53a-94. The sole issue on appeal is whether the trial court erred in granting the state's motion in limine excluding evidence of the victim's prior sexual history, on the basis that such evidence was inadmissible pursuant to General Statutes § 54-86f (rape shield statute).[1] We find no error.

The jury could reasonably have found the following facts. On August 22, 1987, at approximately 9 a.m., the victim was observed in the parking lot of a beauty salon (Uppercuts) located two doors from radio station

---

[1] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70 . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testifed on direct examination as to his or her sexual conduct . . . or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights."

WNHC, which is located near the intersection of College Street and Frontage Road in New Haven. After Barbara Gagnon, an employee of Uppercuts, entered the beauty salon, the victim knocked on the door and asked how she could get into the radio station. Gagnon informed her that the station was not yet open, but that she could wait at the front door or on the back porch steps. The victim, who had taken heroin and cocaine at 6 a.m. that morning, was homeless and wanted to talk to a reporter about her plight. She knocked at the front door of WNHC and, when no one answered, she began to cry. The defendant, who appeared to have been in a fight, was walking along College Street and offered to help the victim, but left when the victim did not respond.

Subsequently, a disc jockey at WNHC opened the door and spoke with the victim. He indicated that no one was available to talk to her at the time and closed the door. The victim persisted and the disc jockey opened the door again, whereupon the victim repeated her story. The defendant walked to the door and indicated that he, too, had no money and wanted to speak to someone. The disc jockey repeated that no one was available to talk to them and closed the door.

The victim went to the back porch of the radio station and waited. The defendant reappeared and offered the victim an "easy way to make money." The defendant left when the victim said "No." The defendant reappeared a third time and again offered her money. At this time, she said, "I'm no hooker, you know. I don't want your money, thank you." Gagnon observed both the defendant and the victim at that time.

The defendant left, then returned and punched the victim in the face when she told him to leave. The defendant then pulled the victim off the porch while she struggled. Gagnon heard the victim scream. The

defendant got the victim in a "headlock" and pulled her across the parking lot to a garage. At this time, Gagnon observed slashing movements of a shiny object held by the defendant and blood on the victim's dress. These slashing movements resulted in a four inch laceration that required stitches. Ernes Yanavich, another employee at Uppercuts, testified that he saw the defendant and the victim argue and that the defendant had pulled the victim so hard that he lifted her out of her shoes and dragged her toward the garage. The police were called. When they arrived, they heard the victim screaming and saw her run out of the garage. The defendant was then arrested.

The state filed a motion in limine to preclude the defendant from presenting evidence that the victim is or has been a prostitute, citing as authority the rape shield statute. The defendant countered that evidence of the victim's prior sexual history was admissible under several exceptions to the rape shield statute. His offer of proof consisted of his testimony, evidence that the victim had a 1985 conviction for prostitution and had been arrested three times for disorderly conduct, and the testimony of a New Haven police officer as to the underlying facts of the disorderly conduct arrests (proffered evidence).

The defendant testified that he paid the victim $20 in exchange for sexual services but that she did not go with him right away. He testified that he then became impatient because the victim already had his money, and that he told her that he did not want to wait any longer. He testified that at this point the victim denied having his money, and he became annoyed and told the victim either to perform as promised or to give him his money back. The defendant admitted that during this exchange of words a struggle ensued and he grabbed the victim by the arm and pulled at her. He further testified that the victim finally agreed to go with him into

a garage behind the radio station, and that, in the garage, they engaged in consensual sexual intercourse. The defendant testified that, thereafter, the victim stole $10 from his back pocket and ran away. The defendant also testified that he had been aware that the victim was a prostitute because he had seen her soliciting.

The trial court granted the state's motion in limine, the defendant was convicted and this appeal followed. On appeal, the defendant claims that the trial court erred in excluding his proffered evidence because it was admissible under subdivisions (2) and (4) of the rape shield statute.

## I

The defendant first claims that the trial court erred in excluding his proffered evidence to impeach the credibility of the victim. We do not agree.

As a preliminary matter, we must determine whether the victim placed her prior sexual conduct in issue during her direct examination, a requirement under § 54-86f (2) that must be satisfied before evidence of a victim's prior sexual conduct is admissible to question her credibility. The defendant claims that the victim placed her prior sexual history in issue because during the victim's testimony as to how the incident occurred, she stated that she responded to the defendant's persistent advances to offer her "money" and "an easy way to make money" by saying, "I'm no hooker, you know. I don't want your money, thank you. . . . I have something here that I'm really trying to do that's important. I'm here to meet a reporter; he's going to come shortly."

We disagree with the defendant's claim that this testimony opened the door to allow further inquiry as to her prior sexual conduct, as required under § 54-86f (2). See *State* v. *Tracy,* 14 Conn. App. 451, 456, 541 A.2d

132, cert. denied, 208 Conn. 811, 545 A.2d 1108 (1988). The victim's statement to the defendant that she was "no hooker" was at best an appropriate spontaneous response to the defendant's persistent advances. Her recitation of that statement before the jury was clearly not testimony of her prior sexual history but rather part of her account of what occurred that day. The trial court was not in error in excluding the defendant's proffered evidence on this ground.

Even if we accept the defendant's argument that the victim's statement placed her prior sexual conduct in issue, the court correctly determined that his proffered evidence was not relevant to the victim's credibility as a witness. " ' "It is a reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. . . ." ' " (Citations omitted.) *State* v. *Butler*, 11 Conn. App. 673, 683, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987). "The credibility of witnesses is principally tested by cross-examination." Id.

The defendant claims that his proffered evidence was relevant to her credibility as a witness because it was relevant to a substantive or material issue in the case, namely, whether the victim consented to engage in sexual intercourse with the defendant. See *Demers* v. *State*, 209 Conn. 143, 156–57, 547 A.2d 28 (1988). For the reasons discussed in the next section, we find that the defendant's proffered evidence was not relevant to a material issue and that the cross-examination of the victim was sufficient to enable the jurors to form opinions as to her credibility. See *State* v. *Butler*, supra, 684.[2]

---

[2] The defendant also argues that the court "did not make a finding that the prejudicial impact of the proffered evidence outweighed its probative

## II

The defendant next claims that evidence of the victim's prior sexual history is admissible under General Statutes § 54-86f (4), which provides that evidence of the sexual conduct of the victim may be admissible where such evidence is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." He claims that the exclusion of his proffered evidence violated his rights under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[3] Specifically, he argues that the exclusion of the proffered evidence unduly restricted his cross-examination of the victim and abridged his right to confront the witnesses against him. Again, we do not agree.

"The constitutional standard for cross-examination is satisfied when defense counsel is allowed to expose to the jury facts from which the jurors could appropriately draw inferences as to the witness' reliability." *State* v. *Butler,* supra, 683–84; see also *State* v. *Cassidy,* 3 Conn. App. 374, 381, 489 A.2d 386, cert. denied,

---

value" and thus did not properly comply with General Statutes § 54-86f. General Statutes § 54-86f "provides for a hearing, out of the presence of the jury, to determine whether the probative value of the evidence outweighs its prejudicial effect on the victim." *State* v. *Butler,* 11 Conn. App. 673, 681, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987). The defendant was afforded this hearing and the court found that the proffered evidence was inadmissible because the victim did not "open the door" to her prior sexual history and because the evidence was not relevant. The court implicitly found that the probative value of the evidence was outweighed by its prejudicial effect when it determined that the evidence was inadmissible. See id., 682.

[3] The defendant has failed to provide any analysis to distinguish or to amplify his state rights on this issue. We decline to undertake such an analysis. See *State* v. *McNellis,* 15 Conn. App. 416, 420 n.2, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

196 Conn. 803, 492 A.2d 1239 (1985). The defendant's cross-examination of the victim as to the events surrounding the incident was detailed and unrestricted. For example, the jurors were exposed to the fact that the victim had taken heroin and cocaine a few hours before the incident. Furthermore, the court permitted inquiry into the victim's reasons for stating that she was not a prostitute, even though the accuracy of her statement could not be challenged. The defendant, however, chose not to inquire. Finally, the defendant was permitted to impeach the victim's credibility by exposing to the jury the fact that the victim had been convicted of a felony in 1983 and again in 1986, was convicted of possession of a narcotic substance in 1985 and 1986, and was on probation at the time she testified. The cross-examination of the victim was sufficient to enable the jurors to form opinions as to the victim's reliability.

The defendant, relying on *Demers*,[4] also claims that the exclusion of his proffered evidence violated his sixth amendment right to confront the witnesses against him and that this resulted in damaging his ability to establish a defense of consent.

In *Demers* v. *State,* supra, the Supreme Court upheld the trial court's decision to grant the defendants a new trial because the state failed to disclose to the defendants, at or prior to trial, the existence of exculpatory information concerning the contents of an arrest report setting forth the circumstances underlying the victim's arrest for prostitution ten months before the incident at issue. In that case, the evidence in the police report was deemed admissible under § 54-86f (4) of the rape shield statute because its exclusion would have violated the defendants' sixth amendment rights under the

---

[4] We note that *Demers* v. *State*, 209 Conn. 143, 547 A.2d 28 (1988), was decided after the trial court's ruling on the motion in limine.

United States constitution to confront the witnesses against them. *Demers* v. *State,* supra, 160.

We do not agree with the defendant's argument that *Demers* is controlling here. In *State* v. *Mastropetre,* 175 Conn. 512, 516, 400 A.2d 276 (1978), our Supreme Court stated that where forcible compulsion is proven beyond a reasonable doubt, a lack of consent is implicit.[5] In the present case, the defendant's own account of the events leading up to the sexual assault confirms the fact that he applied force to get the victim into the garage. It was not until after force was applied that any alleged consent occurred. Furthermore, two eye-witnesses testified to seeing the victim being slashed at with a shiny object and dragged toward the garage with such force that she was lifted out of her shoes. The defendant's argument that he was justified in applying force because he paid the victim money does not even remotely suggest that the defense of consent was raised.

Moreover, *Demers* is clearly distinguishable from the present case. In *Demers,* the court determined that the underlying factual circumstances leading to the victim's arrest for prostitution ten months before the incident were so relevant, probative and highly material *under*

---

[5] We note that the court in *State* v. *Mastropetre,* 175 Conn. 512, 516, 400 A.2d 276 (1978), interpreted the definition of "Forcible compulsion" then contained in General Statutes (Rev. to 1975) § 53a-65 (8), to apply to rape in the first degree, then contained in General Statutes (Rev. to 1975) § 53a-72. These two sections have been repealed but the present definition of "Use of force" contained in General Statutes § 53a-65 (7) is substantially similar to the previous language of § 53a-65 (8). Compare § 53a-65 (8) (now repealed) which defined "Forcible compulsion" to mean "physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person" to "Use of force" in § 53a-65 (7): "(A) use of a danger-ous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim."

*the circumstances* of that case that such evidence would have been admissible under General Statutes § 54-86f (4). *Demers* v. *State,* supra, 159.

The underlying factual circumstances of the arrest report in *Demers* showed that the victim had been arrested for prostitution ten months before she was allegedly sexually assaulted, after a male walked up to an undercover police officer in an unmarked car, and asked the officer if he wanted to pay for the sexual services of a woman. When the officer agreed, the woman, identified as the victim in the later incident, walked over to the car, opened the door and, upon recognizing the person in the car to be a police officer, tried to escape but was subsequently apprehended. Similarly, the defendants in *Demers* claimed that the victim had walked up to their car in the same city in which she had been arrested, propositioned them to engage in sex for money and that this consensual sex later occurred.

In the present case, the defendant presented testimony of a New Haven police officer who testified to the facts underlying the victim's three previous arrests for disorderly conduct. As to these disorderly conduct arrests, the officer indicated that the victim had been arrested on three occasions for *disorderly conduct,* not prostitution, on the basis of the victim's walking up to cars and impeding traffic. The officer testified that her conduct of going into the street, stopping cars at random and accepting rides was consistent with that of a prostitute, but he also indicated that the only basis for these arrests was impeding vehicular traffic. Unlike *Demers,* there is no factual similarity between the underlying facts of this victim's previous arrests for disorderly conduct and the facts surrounding the incident at hand. See *State* v. *Butler,* supra, 682.

Even if we assume the defendant's version to be true, the defendant admitted that he approached the victim

and offered her money to engage in sexual activity; the victim did not solicit him. Furthermore, the victim was sitting at the radio station waiting to speak to people; she was not in the middle of the street walking up to cars. The defendant failed to show that the victim's prior sexual history was relevant to establish his alleged defense of consent.

There is no error.

In this opinion the other judges concurred.