******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDWIN NJOKU
(AC 36189)

Keller, Mullins and Kahn, Js.

*Argued October 27, 2015—officially released February 16, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Vitale, J.)

*Richard S. Cramer*, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Vicki Melchiorre*, supervisory assistant state's attorney, and *Elizabeth S. Tanaka*, assistant state's attorney, for the appellee (state).

*Opinion*

KAHN, J. The defendant, Edwin Njoku, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the fourth degree in violation of General Statutes 53a-73a (a) (2) and tampering with a witness in violation of General Statutes § 53a-151 (a). On appeal, the defendant claims that the trial court erred in (1) denying his motion for a judgment of acquittal on the charge of tampering with a witness, (2) admitting evidence of prior acts of sexual misconduct of the defendant, and (3) refusing to admit evidence of a prior false allegation of sexual assault by the victim and prior sexual acts of the victim.[1] We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant was the victim's physician. In 2011, the victim was seeing the defendant for a back injury that she sustained when she slipped and fell on ice. The victim had discussed the slip and fall with an attorney, who asked her to obtain her medical records from the defendant. On October 21, 2011, the victim called the defendant's office to make an appointment to pick up the records and was told that the defendant would return her call. When the defendant called the victim, he told her to come to the office the following day at about 2 p.m.

On Saturday, October 22, 2011, the victim took a bus to the defendant's office. She arrived between 2 and 2:10 p.m. Upon arrival, she did not see any staff members in the office. When she saw the defendant, he told her to go to one of the examination rooms. While the victim was sitting on an examination table, the defendant came into the room and asked the victim why she was there. After explaining that she had come to pick up her medical records, the defendant told her that he was going to check her back. While she was still sitting on the table, the defendant stood and touched her from her neck to her lower back. At one point, while touching the victim's back with his left hand, the defendant put his right hand on the victim's breast. When the victim pushed the defendant's hands away and asked him what he was doing, the defendant told her that he was checking to see if she had breast cancer.

The victim told the defendant that she felt uncomfortable and wanted to leave. The defendant apologized for making her feel uncomfortable but told her to let him finish examining her. He asked the victim to lie on her back on the examining table. The defendant applied pressure to the victim's chest with his left hand and then walked around her and unbuttoned her pants and zipper and pulled her pants down to her knees. The defendant then climbed on top of the victim. The victim was unsuccessful in pushing the defendant's hands

away from her chest and he was able to put his penis into her vagina. The defendant also pulled up the victim's shirt and sports bra and put his mouth on her breast. He then removed his penis and ejaculated on her.

When the defendant got up to clean himself, the victim pulled her pants back up and left. Once at home, the victim had an argument with her father and then told her mother what the defendant had done to her. The victim then called 911 and was transported to a hospital by ambulance. She did not take a shower or change her clothes. While at the hospital, the victim told a police officer what had happened. A sexual assault forensic examiner examined the victim and administered the sexual assault kit, which included taking the victim's clothing and swabs of her vaginal area, genital area, and breast. The defendant's DNA was not found on the vaginal swab, but the defendant's known DNA profile was consistent with the defendant being a source of DNA from the genital swab, the breast swab, and from the swab taken from the button, button hole and zipper pull of the victim's jeans as well as cuttings from the crotch area of her jeans.

On November 4, 2011, the defendant called the victim's cell phone and asked to speak to the victim's father, who had been a patient of the defendant's for approximately ten years.[2] When the victim's father called the defendant back, the defendant asked him why he had missed a scheduled appointment. During the phone call, the defendant sounded worried or nervous and stated that "all human beings make mistakes and that talking, while talking, we could resolve problems." The defendant also said that if he committed any error, "everything has a solution and we can fix it." The defendant told the victim's father to remember that he had been a good doctor to his family, and not to do anything against him because the victim's father would destroy the defendant's life if he said anything.

On November 10, 2011, East Hartford police officers executed warrants to search the defendant's office and to obtain a buccal swab from him. On that date, the police transported the defendant to the police station to take the buccal swab and then transported him back to his office at the conclusion of that process.

On November 17, 2011, the defendant called Jesus Ruiz, an unemployed minister who was also a patient of the defendant's, and asked if he could go to Ruiz' home. Once at Ruiz' home, the defendant appeared a little nervous and scared. The defendant asked Ruiz to go to the victim's family to try to reach an agreement with them. The defendant explained that he was being accused of touching the victim and that the victim's family wanted to destroy everything he had built. He told Ruiz that the victim went to her appointment with the defendant wearing a miniskirt and no underwear and that his mistake was seeing her alone. The defen-

dant then asked Ruiz if he would "go to the family's house and try to convince them so that they can reach an agreement outside the court with him, that he wasn't rich and didn't have a lot of money but he could reach an agreement outside of court."

Following this meeting, Ruiz went to see the victim's family.[3] After speaking with the family and hearing their version of what had occurred, Ruiz told the family what the defendant had told him about offering money to resolve the matter.[4] Ruiz told the family not to accept the agreement. When Ruiz returned home, he called the defendant to tell him that the defendant had deceived him. The defendant said that now he was going to have problems because the family was going to call the police.

The defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the fourth degree, and tampering with a witness. The defendant was tried before a jury, which found the defendant not guilty of sexual assault in the first degree, and guilty of sexual assault in the fourth degree and tampering with a witness. The court, *Vitale, J.*, imposed a total effective sentence of ten years in prison, execution suspended after five years, and five years probation. This appeal followed.

I

The defendant first claims that the court erred in denying his motion for a judgment of acquittal as to the count of tampering with a witness. Specifically, the defendant argues that there was no evidence that he or Ruiz had had direct contact with the victim. The defendant further argues that he expected the victim to file a civil lawsuit against him, and that an offer to settle a civil lawsuit arising from the same behavior that would constitute the criminal prosecution does not constitute tampering with a witness. We disagree.

"When reviewing a sufficiency of the evidence claim, we do not attempt to weigh the credibility of the evidence offered at trial, nor do we purport to substitute our judgment for that of the jury. Instead, our review consists of a two-step process in which we construe the evidence presented at trial in a light most favorable to sustaining the verdict . . . and then determine whether the jury could reasonably have found, [on the basis of] the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ortiz*, 312 Conn. 551, 572, 93 A.3d 1128 (2014). "Indeed, it is axiomatic that [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Jordan*, 314 Conn. 354, 385, 102 A.3d 1 (2014).

Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." "Thus, the witness tampering statute has two requirements: (1) the defendant believes that an official proceeding is pending or about to be instituted; and (2) the defendant induces or attempts to induce a witness to engage in the proscribed conduct." *State* v. *Ortiz*, supra, 312 Conn. 562. "[Section] 53a-151 (a) applies to any conduct that is intended to prompt a witness to testify falsely or refrain from testifying in an official proceeding that *the perpetrator believes* [is] pending or imminent. . . . [A]s long as the *defendant* believes that an official proceeding will probably occur, it does not matter whether an official proceeding is *actually* pending or is about to be instituted." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 569.

In the present case, the state presented evidence that on November 4, 2011, the defendant called the victim's father and stated that "all human beings make mistakes and that talking, while talking, we could resolve problems." The defendant also said that if he committed any error, "everything has a solution and we can fix it." The defendant sounded nervous during this conversation, and asked the victim's father to remember that he had been a good doctor to his family, and not to do anything against him. The state also presented evidence that on November 10, 2011, one week before the defendant contacted Ruiz, East Hartford police officers executed warrants to search the defendant's office and to obtain a buccal swab from him. On that date, the police transported the defendant to the police station to take the buccal swab and then transported him back to his office at the conclusion of that process. Finally, the state presented evidence that on November 17, 2011, the defendant contacted Ruiz and asked him to try to convince the victim's family to reach an agreement outside of court. On the basis of this evidence, the jury reasonably could have concluded that the defendant believed that an official proceeding against him was pending or about to be instituted,[5] and that, by asking Ruiz to contact the victim's family about reaching an agreement out of court, he was attempting to induce the victim to testify falsely or to withhold testimony.

The defendant contends, however, that the evidence was insufficient for a conviction under this statute because, construing the evidence in the light most favorable to sustaining the verdict, there was no evidence that Ruiz spoke to the victim either in person or over the telephone. The defendant essentially argues that at most, the evidence established that Ruiz spoke to the

victim's parents and that, because the victim was an adult, she could have spoken for herself or made a decision for herself.[6] This court reached a contrary conclusion, however, in *State* v. *Carolina*, 143 Conn. App. 438, 69 A.3d 341, cert. denied, 310 Conn. 904, 75 A.3d 31 (2013). In that case, the defendant, while incarcerated awaiting trial, mailed a letter to his cousin, attempting to induce the cousin's daughter to testify falsely. Id., 441–42. In concluding that this conduct was prohibited by § 53a-151, we stated: "Neither the statute nor the case law interpreting the statute requires that the request to testify falsely be made directly to the witness. The purpose of the statute would be thwarted if a defendant could avoid liability by inducing false testimony indirectly through an intermediary instead of communicating directly with the witness himself." Id., 445. There was ample evidence in the present case from which the jury reasonably could have concluded that the defendant contacted Ruiz to attempt to induce the victim to testify falsely or to withhold testimony.

The defendant also argues that he expected the victim to file a civil lawsuit against him, and that an offer to settle a civil lawsuit for the same behavior that could constitute the criminal prosecution does not satisfy the requirements of the witness tampering statute.[7] He points out that the victim testified that she had brought such an action against him and was seeking damages. A review of the record, however, reveals that although the victim testified at trial that she had brought an action against the defendant, she did not testify as to when that action had been commenced, and no evidence was presented that the action was pending at the time that the defendant asked Ruiz to talk to the victim's family. Rather, the evidence established that the only matter pending at that time was a criminal investigation.

On the basis of our review of the evidence presented at trial, as set forth previously, viewed in the light most favorable to sustaining the verdict, we conclude that the evidence was sufficient to support the defendant's conviction of tampering with a witness.

II

The defendant next claims that the court erred by admitting into evidence the testimony of two witnesses, S.R. and E.H., regarding prior acts of sexual misconduct committed by the defendant. We conclude, however, that as a result of the defendant's failure to brief the issue of harmfulness, this claim lacks merit.

The following additional facts are necessary for our discussion. Prior to the start of trial, the state filed a notice of uncharged misconduct. On June 19, 2013, during a pretrial hearing on the notice, the state presented the testimony of S.R. and E.H, both of whom testified that the defendant engaged in inappropriate sexual con-

tact with them during office visits.[8] The court did not rule on the uncharged misconduct at that time.

On July 22, 2013, after the victim testified about the incident in question, the court excused the jury. The victim then testified, out of the presence of the jury, regarding an incident that occurred approximately one year prior to the incident in question. On that occasion, the defendant asked the victim to bend over and then "had his man thing right in [her] butt." Following oral argument in which the defendant argued that the testimony was inadmissible and prejudicial, the court ruled that this testimony was admissible. The victim then testified before the jury regarding the prior incident, and the court immediately provided the jury with a limiting instruction regarding its consideration of this evidence. On July 26, 2013, the court ruled that, pursuant to *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), the testimony of S.R. and E.H. was admissible as evidence of prior uncharged sexual misconduct. S.R. and E.H. thereafter testified that the defendant had engaged in inappropriate sexual contact with them in his office on occasions prior to the incident in question. On appeal, the defendant argues that the court abused its discretion in allowing S.R. and E.H. to testify regarding prior uncharged sexual misconduct.

"[E]vidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness." (Internal quotation marks omitted.) Id., 473. "[Such] [e]vidence . . . is admissible only if its probative value outweighs the prejudicial effect that invariably flows from its admission. . . . The admission of evidence of . . . uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Citations omitted; internal quotation marks omitted.) *State* v. *George A.*, 308 Conn. 294–95, 63 A.3d 918 (2013).

We need not discuss the merits of this claim because even if we were to assume, without deciding, that the court improperly admitted the testimony of S.R. and E.H. into evidence, the defendant has failed to demonstrate how this ruling was harmful.[9] "Absent any analysis as to how the ruling harmed the defendant, we are unable to conclude that the admission of this evidence was an abuse of discretion." *State* v. *Gonzalez*, 106

Conn. App. 238, 249, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008); see also *State* v. *LaVallee*, 101 Conn. App. 573, 579, 922 A.2d 316, cert. denied, 284 Conn. 903, 931 A.2d 267 (2007). Accordingly, we conclude that this claim lacks merit.

### III

The defendant next claims that the court denied him his right of confrontation and his right to present a defense when it refused to allow into evidence, pursuant to the rape shield statute, General Statutes § 54-86f,[10] a prior false allegation of sexual assault by the victim and prior sexual acts of the victim. We disagree.

Before addressing the defendant's specific claims, we set forth the applicable standard of review and principles of law. "It is well established that a trial court has broad discretion in ruling on evidentiary matters, including matters related to relevancy. . . . Accordingly, the trial court's ruling is entitled to every reasonable presumption in its favor . . . and we will disturb the ruling only if the defendant can demonstrate a clear abuse of the court's discretion. . . . If we conclude, however, that the evidentiary ruling was improper and that the evidentiary impropriety is of constitutional [proportion], the state bears the burden of proving that the error was harmless beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Shaw*, 312 Conn. 85, 101–102, 90 A.3d 936 (2014).

"It is well established under our law that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clause of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. . . .

"We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . For example, the trial court has a right, indeed, [a] duty, to exclude irrelevant evidence. . . . The rules excluding evidence from criminal trials, however, may not be arbitrary or disproportionate to the purposes they are designed to serve. . . .

"The rape shield statute, § 54-86f, was enacted specifically to bar or limit the use of prior sexual conduct of the alleged victim of a sexual assault because it is such highly prejudicial material. . . . Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her

from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters." (Citations omitted; internal quotation marks omitted.) *State* v. *Collin*, 154 Conn. App. 102, 133–34, 105 A.3d 309 (2014), cert. denied, 315 Conn. 924, 109 A.3d 480 (2015).

"The rape shield statute provides for a two step process before evidence proffered by a defendant as falling under one of the statute's exceptions may be admitted. First, if the defendant has satisfied his preliminary burden in his offer of proof to show that the evidence is potentially relevant, pursuant to the statute the trial court must conduct a hearing to determine the admissibility of the evidence. Second, [i]f, after [a] hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . .

"In the first step of this two part process, the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a [sexual assault] victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than evidence relevant merely to demonstrate the unchaste character of the victim, be admissible. . . .

"If the trial court determines that the evidence is relevant and admissible under one of the exceptions enumerated in § 54-86f, the trial court must proceed to the second part of the two part process outlined in the statute. That is, the evidence is admissible only if its probative value outweighs the prejudicial impact on the victim." (Internal quotation marks omitted.) *State* v. *Shaw*, supra, 312 Conn. 104.

With these principles in mind, we now address the defendant's claims as they pertain to the rape shield statute.

A

The defendant first claims that the court improperly excluded evidence that the victim had made a prior false accusation of sexual assault. The following additional facts are necessary for the resolution of this claim. On June 19, 2013, the defendant filed a motion in limine requesting permission to question the victim regarding evidence related to a prior alleged false rape claim made by the victim on November 5, 1997, when the victim was fourteen years old. At a hearing on July 22, 2013, the defendant presented four statements contained in three documents in support of the motion. The defendant first relied on a police report in which a police officer interviewed a school official. According to the

report, the victim said that she and a boy were found kissing in a restroom; the victim never mentioned that she was sexually assaulted. The defendant next relied on another report from the same officer, in which the victim "told her father she was afraid he would throw her out of the house if he found out." The defendant argued that according to this report, the bathroom incident arose when the victim called the boy a "faggot" and challenged him to "prove his manhood." The defendant next presented a note that the victim purportedly gave to a classmate to deliver to the boy in question, stating, "I will fuck your bick . . . will my pussy." Finally, the defendant pointed to another statement in one of the police reports in which the victim first claimed the sexual encounter was consensual and then claimed it was rape. On the basis of this evidence, the defendant sought to penetrate the rape shield statute to show that the victim had made a prior false complaint.

Following argument, the court stated that it would hold an evidentiary hearing on the matter. At this hearing, the victim testified that she remembered getting into trouble for something that happened in the bathroom while in middle school. She did not remember the name of the boy involved in that incident and denied giving a note to her friend to give to the boy. The victim testified that after the incident she told the school administrator that nothing had happened between her and the boy because she was afraid. The victim denied telling school officials that the sexual encounter with the boy was consensual. She testified that when she went to the hospital later that day, she told the doctor that she had been raped. She denied claiming that it was rape because she was afraid her father would throw her out of the house if he knew that she had consented to have sex in the bathroom. The victim testified that she did not agree to have sex with the boy and that the boy did rape her.

At the conclusion of the evidentiary hearing, the defendant argued that the victim had been "uncandid about a prior encounter that may or may not have been nonconsensual with a classmate . . . at the [middle school]. She . . . testified she was raped by this young man and she testified that she initially said it was something other than rape," either by omission or by saying that it was consensual. In response, the state argued that the defendant had not made a showing that the victim's prior claim, which was made when she was fourteen years old, was demonstratively false. Following the arguments, the court found that the defendant had failed to meet his burden of showing that the victim's 1997 claim was demonstratively false. The court further found that the evidence would be more prejudicial than probative. It, therefore, precluded any testimony regarding the 1997 incident.[11]

The defendant argues that he was denied his right to

confront witnesses and present a defense when the court precluded evidence regarding the 1997 incident. On the basis of our review of the record, however, we conclude that the court properly precluded this evidence, as the defendant failed to demonstrate the falsity of the 1997 allegation. "[T]he defendant bears the burden of establishing the relevance of proffered testimony. In order to get such evidence before the jury, he must make a showing that, in fact, the prior complaint was: (1) made by the victim; and (2) *false*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771–72, 991 A.2d 1086 (2010); *State* v. *Sullivan*, 244 Conn. 640, 648–49, 712 A.2d 919 (1998). "Unless [the victim] had raised a *false* claim before, her conduct with another man had no bearing on her conduct with this defendant or on the credibility of her testimony in this case." (Emphasis in original; internal quotation marks omitted.) *State* v. *Slater*, 23 Conn. App. 221, 225, 579 A.2d 591 (1990). Further, the inconsistencies regarding what occurred in 1997 do not establish that the victim's claim of sexual assault in 1997 was false. See *State* v. *Martinez*, supra, 774; *State* v. *Clifford P.*, 124 Conn. App. 176, 186, 3 A.3d 1052 ("although there are [D]epartment [of Children and Families] reports indicating that the victim gave inconsistent statements regarding the [prior] incident, the defendant does not offer any link between these inconsistencies and the mother's statements [indicating that she thought the victim was lying], nor would such inconsistencies necessarily support a conclusion that the victim was lying"), cert. denied, 299 Conn. 911, 10 A.3d 529 (2010); *State* v. *Morales*, 45 Conn. App. 116, 125, 694 A.2d 1356 (1997) ("[a] poor or flawed memory by [the victim] in making an accusation is not sufficient to supply evidence of falsity"), appeals dismissed, 246 Conn. 249, 714 A.2d 677 (1998); *State* v. *Barrett*, 43 Conn. App. 667, 675, 685 A.2d 677 (1996) ("[w]hile these inconsistencies may point to the victim's flawed memory of the prior assaults, they do not supply evidence of falsity"), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997). Because the defendant failed to establish that the prior accusation was false, he did not establish the relevancy of this testimony. Accordingly, the court did not abuse its discretion in prohibiting an inquiry into the victim's prior accusation of sexual assault.

## B

The defendant next claims that the court erred in excluding evidence of prior sexual acts of the victim, specifically, other male DNA found on the vaginal swab taken from the victim. The following additional facts are necessary for the resolution of this claim. Following the argument regarding the victim's prior accusation of sexual assault, the court considered the state's objection, pursuant to the rape shield statute, to evidence of, and any reference to, third parties' DNA or semen being present in the vaginal swab taken from the vic-

tim.[12] During the argument on this objection, the defendant argued that he was not offering this evidence to establish that other men were the source of the semen; he was offering the evidence, rather, to impeach a statement that the victim made to the nurse who administered the sexual assault kit in which the victim indicated that she had not had sexual intercourse in the last seventy-two hours. According to the defendant, evidence of other male DNA on the vaginal swab demonstrated lack of candor at a critical time in this case. The defendant argued that it was relevant because "if she lied about one thing, the jury can conclude she lied about others."

In response, the state argued that this went to the "very heart of the rape shield" and pointed out that there was no question that the persons who contributed the DNA sought to be admitted were not present during the incident in question. The state argued, therefore, that there was no question as to misidentification in this case. The state also argued that there was no evidence that the victim actually lied to the nurse when the nurse checked "no" on the form in response to this question. It pointed out that the victim had explained previously that she believed there were twelve hours in a day so the victim's understanding of seventy-two hours may not have been clear. The state further argued that, even if the victim had misrepresented her prior conduct to the nurse, this did not allow the defendant to circumvent the rape shield law. Finally, the state argued that the relevance of the single misstatement about sexual misconduct within seventy-two hours was so minimal that it could not possibly outweigh the prejudice that this would cause. At the conclusion of the argument, the court disallowed any questioning on this issue.[13]

"Generally, in a sexual assault case, evidence of prior sexual conduct may not be introduced to impeach the credibility of a complaining witness. . . . General Statutes § 54-86f (2)[14] [however] permits introduction of such evidence on the issue of the victim's credibility provided the victim has testified on direct examination concerning her prior sexual conduct." (Citations omitted; footnote added.) *State* v. *Butler*, 11 Conn. App. 673, 683, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987). During oral argument on the admissibility of this evidence, the state pointed out that the victim in this case was not under oath when she was responding to the nurse's questions but rather, was answering questions while under duress and might have misunderstood the question. At trial, the victim testified on direct examination regarding the prior incident with the defendant, but she did not otherwise testify regarding her sexual conduct. In precluding the evidence and finding that the probative value did not outweigh its prejudicial impact, the court noted "the circumstances under which this claim is presented, which is essentially

a box checked on a form and nothing more."

In the present case, because the evidence was offered only to challenge the victim's credibility and the victim did not testify on direct examination as to her sexual conduct, the evidence did not fall within the exception contained in § 54-86f (2). See *State* v. *Lake*, 43 Conn. App. 715, 722–23, 686 A.2d 510 (1996) (declining to afford review of unpreserved claim that proffered evidence was admissible under subdivision [2] of rape shield statute when victim did not testify on direct examination about her prior sexual conduct); cf. *State* v. *Butler*, supra, 11 Conn. App. 683 (victim testified on direct examination, but evidence of her alleged prior sexual history not permitted at trial on ground that it did not implicate her veracity). We further emphasize that the policies underlying the rape shield statute include "protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment." (Internal quotation marks omitted.) *State* v. *Collin*, supra, 154 Conn. App. 134. On the basis of the foregoing, we conclude that the court did not abuse its discretion in precluding the evidence of other male DNA on the vaginal swab taken from the victim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Prior to this telephone call, the East Hartford Police Department had advised the victim's father with regard to communicating with the defendant, and as a result of this advice, he responded to the defendant by "playing dumb . . . ."

[3] Ruiz testified that he went to see the family as a minister and because he had been friends with them for many years.

[4] No specific amount of money was mentioned at this meeting.

[5] An "official proceeding" is defined as "any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding." General Statutes § 53a-146 (1).

[6] We note that at the time of trial, the victim was thirty years old but could not read or write and had taken special education classes in school due to a learning disability. The victim's father had custody of the victim's children. The jury could have considered this evidence in determining whether, by asking Ruiz to contact the victim's family, the defendant had induced or attempted to induce the victim to testify falsely or to withhold testimony.

[7] In support of this argument, the defendant cites *State* v. *LaPointe*, 418 N.W.2d 49 (Iowa 1988). In that case, the Supreme Court of Iowa, considering the Iowa statute pertaining to tampering with a witness, stated: "[The statute] requires proof of an intent to improperly influence a witness' testimony. Proof that money was offered with the intent to deter a victim from signing a complaint or causing a criminal complaint to be filed does not satisfy [the statute]. While offering money to deter a victim from pursuing criminal charges may, in some instances be improper, it simply is not prohibited by the express terms of [the statute]. Consequently, the trial court erred in considering an intent to deter the victim from pressing charges as an alternative to an intent to influence a witness' testimony." Id., 52.

Unlike the statute at issue in *LaPointe*, § 53a-151 expressly provides that a person is guilty of tampering with a witness if, believing that an official

proceeding is pending or about to be instituted, he "induces or attempts to induce a witness to . . . withhold testimony . . . ." We, therefore, agree with the state that *LaPointe* is distinguishable from the present case on the basis of the different requirements contained in the Iowa and Connecticut statutes.

[8] The state also presented the testimony of S.B. and R.M. These witnesses did not testify at trial.

[9] The defendant conceded at oral argument before this court that he had not briefed the issue of harmfulness.

[10] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."

[11] The court stated: "The court has heard evidence today from the alleged victim. . . . No other evidence was presented. At most, the evidentiary hearing established that the alleged victim at age fourteen, which the court again finds to be relevant, was in a bathroom with a male and that perhaps there may be more than one version of what transpired in the bathroom. As [counsel for] the defendant . . . acknowledged, that may or may not have been consensual. No other evidence was presented. Keeping in mind the purposes of § 54-86f, the defendant has failed to meet his burden of conclusively showing that her claims in 1997 were demonstrably false. The court also finds that based on what's been presented, the evidence would be more prejudicial than probative, and therefore the court is going to preclude any testimony as to the 1997 incident."

[12] This objection was contained in the state's memorandum of law in opposition to the defendant's request for a preliminary hearing concerning the rape shield statute.

[13] The court stated: "The court is aware, based on the arguments of counsel and what was being asked during jury selection, this is not an identification case, so in terms of the presence of other people's semen or DNA, it's really not relevant in connection with identification because that's . . . not the defense or the claim that's being made obviously, so the court does believe that this touches on the rape shield statute and that it's inextricably linked with that based on [the] nature of the claims that are being raised.

"The court has to balance probative value versus the prejudicial effect under the statute. The court finds that given the limited nature of the defendant's claim with respect to relevancy, the court finds that the probative value does not outweigh the prejudicial effect under the rape shield statute, particularly given the circumstances under which this claim is presented, which is essentially a box checked on a form and nothing more. Even aside from that, the court believes that, again, balancing, it does not meet the requirements for admissibility for the purposes of being argued.

"So, the court is going to disallow any questioning on that pursuant to the rape shield statute."

[14] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, *provided the victim has testified on direct examination as to his or her sexual conduct . . . .*" (Emphasis added.)